305 So.2d 794 (1974)
Darion Northrup CASTLE, a/K/a Sam H. Castle, Appellant,
v.
STATE of Florida, Appellee.
No. 72-1067.
District Court of Appeal of Florida, Fourth District.
December 20, 1974.
Rehearing Denied January 30, 1975.
*795 Larry Klein, Cone, Wagner, Nugent, Johnson & McKeown, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, Nelson E. Bailey and Thomas M. Carney, Asst. Attys. Gen., West Palm Beach, for appellee.
LEE, J. CAIL, Associate Judge.
On January 29, 1972, the Appellant, Darion Northrup Castle also known as Sam H. Castle, after trial by jury, was found guilty of the crimes of 1) conspiracy to commit the felony of third degree arson, 2) attempt to burn a boat or vessel, the property of another, by placing flammable liquid in or about the boat, or fourth degree arson, and 3) unlawfully placing on the boat a flammable, combustible, or explosive substance with intent to burn.
On November 10, 1972, defendant was adjudged guilty and sentenced to imprisonment for ten years under Count 3, distribution of flammable substance with intent to burn, and a concurrent sentence of one year for Count 1, conspiracy to commit a felony. Sentence under Count 2 was withheld.
The facts of the case are as follows. On September 7, 1970, a sailboat, the Kuewa, caught fire and burned in Lantana, Palm Beach County, Florida. The Defendant and one Patricia Kirby were on board the boat at the time of the fire, and both were severely burned. Miss Kirby later died, and the Defendant was hospitalized for over a month.
At the time of the fire, the sailboat was docked at the Lantana Boat Yard, and the Lantana Fire Department was called to the scene of the fire. John R. Kendall, the Lantana Fire Chief, and one Jaslowski, a fireman, went to the scene in a fire truck and boarded the vessel. They used fire fighting apparatus to put out the flames, and, according to Kendall, observed candles, paper, lacquers, thinners, acetone, and plastic bags full of gasoline. Recognizing possible arson, Kendall called the State Fire Marshal. The evidence discovered and removed by Kendall and the Deputy State Fire Marshal, one Bean, constituted the basic foundation of this case.
Defendant moved to suppress the evidence taken from the boat because the search was performed without a search warrant. The Motion to Suppress was denied, and Defendant assigns this as error.
The first point presented is, therefore:
"Whether evidence seized by the State Fire Marshal and local Fire Chief from the vessel that was the object of the arson charge should have been suppressed from evidence at trial".
*796 Evidentiary hearing was held on Appellant's pretrial Motion to Suppress and at the conclusion of that hearing, Appellant's Motion was denied by the Trial Court. The evidence taken at said hearing shows that the fireman went to the boat for the sole purpose of putting out the fire. In furtherance of this purpose, and in performance of his duties, he discovered the articles which led him to suspect arson and to call the State Fire Marshal for a verification of his suspicions.
Where an officer of state government, while engaged in performing his lawful duties, observes contraband or criminal evidence, he may seize the items and they are admissible in evidence, cf., Bretti v. Wainwright, 439 F.2d 1042 (5th Cir.1971), cert. den. 404 U.S. 943, 92 S.Ct. 293, 30 L.Ed.2d 257; United States v. Green, 474 F.2d 1385 (5th Cir.1973); State v. Parnell, 221 So.2d 129, on rehearing 233 So.2d 437 (Fla. 1969); Boim v. State, 194 So.2d 313 (3d D.C.A.Fla. 1967); Farrington v. State, 207 So.2d 513 (3d D.C.A.Fla. 1968); Riley v. State, 263 So.2d 200 (Fla. 1972); and Powers v. State, 271 So.2d 462 (1st D.C.A.Fla. 1973). There has been no suggestion in this case that the Fire Chief was not lawfully aboard the sailboat for proper firefighting and fire control purposes. At this time he was an ex-officio agent of the state Fire Marshal (§ 633.121, F.S.). While aboard the boat for a lawful and obviously necessary public safety reason, the Fire Chief observed the incriminating evidence. These items, which he saw in plain view while performing his lawful duties, were seized and removed for public safety reasons. But even if he had not removed the materials for safety reasons, he could have seized the items because they were in plain view and clearly were contraband, i.e., they were the instrumentalities of the felony of arson. See also: Florida Statutes, Sec. 806.111 which defines "firebombs" and declares them to be contraband; and State v. Sanders, 239 So.2d 120 (2d D.C.A.Fla. 1970).
Appellant argues that the plain view doctrine cannot apply in this case because the search was conducted more than two hours after the fire.
Even if it were true that the flammable materials were found two hours later as a result of the search, this does not alter the fact that a search was performed while the Fire Chief was still on the scene, pursuant to his fire control responsibilities, since he testified he stayed there for three hours to be sure the fire was out.
To state the proposition that a fireman at the scene of a fire for lawful purposes, having observed evidence of arson, then needs to procure a search warrant to take such material into custody, or to search for further incriminating evidence, is to show the absurdity of this contention. We find no merit in this position. Indeed, the fire chief's failure to act, if such he had done, might very well have resulted in further tragedy, and valid criticism of his conduct as neglect of duty. Furthermore, although neither party has seen fit to argue this point, it seems clear from the evidence that the Appellant had, at the time of the search, abandoned the searched premises, albeit involuntarily, so that he could exercise neither actual nor constructive control over said premises, and therefore had no standing to complain about the subject search.
At the time of the commission of the criminal act herein, the Statutory penalty was ten years. At the time of trial, such sentence had been reduced to a maximum of five years. Appellant, having been sentenced to ten years, argues that only five could have been imposed. Florida Statute, Section 775.12 provides:
"Limitation of repeal as to criminal cases.  No offense committed, and no penalty and forfeiture incurred, prior to the taking effect of these statutes, shall be affected thereby, and no prosecution had or commenced, shall be abated thereby, except that when any punishment, forfeiture *797 or penalty shall have been mitigated by the provisions of these statutes, such provisions shall apply to and control any judgment or sentence to be pronounced, and all prosecutions shall be conducted according to the provisions of law in force at the time of such further prosecution and trial applicable to the case."
A long line of Florida cases clearly hold that the amendment of a criminal statute does not affect either the prosecution or the punishment of a crime committed before the amendment becomes effective. See: Raines v. State, 42 Fla. 141, 28 So. 57 (1900); Whatley v. State, 46 Fla. 145, 35 So. 80 (1903); Plummer v. State, 83 Fla. 689, 92 So. 222 (1922); Ex Parte Browne, 93 Fla. 332, 111 So. 518 (1927); Bazarte v. State, 114 So.2d 500 (2d D.C.A.Fla. 1959). Indeed, three Florida appellate decisions specifically hold that the punishments provided by statute at time of the offense are controlling over different punishments provided by changes in the criminal statute prior to trial, cf., Reynolds v. State, 33 Fla. 301, 14 So. 723 (1894); Turner v. State, 87 Fla. 155, 99 So. 334 (1924); and Sing v. State, 115 So.2d 773 (1st D.C.A.Fla.App. 1959). Finally, it should be noted that Art. 10, Section 9, Florida Constitution, 1968 Revision, provides:
"Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed." (Emphasis added)
As stated in brief of Appellee at page 25, if Florida Statutes, Section 775.12, attempts to do what Appellant says it does, the statute is unconstitutional and void.
During the trial, in defense counsel's cross-examination of the arresting police officer, the following occurred:
"Q. And you did not arrest him until October 13, 1970?
"A. That's correct, sir.
"Q. Could you not have served an arrest on September 8, 1970 on him and noted that they detain him at the hospital for your custodial duty?
"A. I notified (sic) the hospital, Mr. Starr, that when he was ready to be released we would like to be notified.
"Q. I know that. Couldn't you have gone down on the 8th?
"A. I went down on the 9th.
"Q. You did?
"A. Yes.
"Q. For what purpose?
"A. To try to get a statement from your client, and after reading him his rights, he refused to give us one."
Appellant's counsel immediately had the jury excused, and moved for a mistrial on grounds the answer was unresponsive and prejudicial comment on the accused's having exercised his Fifth Amendment rights. The Trial Judge denied a mistrial, but did give a corrective jury instruction.
The answer given by the arresting police officer was clearly responsive to the line of questions being asked. It was not volunteered, but rather was solicited by the questions posed by Appellant's own counsel. Appellant's lawyer attempted to find out from this witness why the accused had been arrested by this witness on one date and not another, and the witness gave his reason. Consequently, there is no error to complain about in the first place. A criminal defendant may not take advantage on appeal of an error which he himself induced at trial, cf., Anderson v. State, 230 So.2d 704 (2d D.C.A.Fla. 1970).
At the trial, the Appellant made a proffer of testimony that Patricia Kirby made a "dying declaration", exonerating him. This proffer was denied and this denial has been assigned as error.
*798 The dying declaration exception to the hearsay rule requires three elements: 1) That the declarant's statement must have been made at a time when he believes death was imminent; 2) that it must concern circumstances accompanying or leading up to or causing the deceased's death, and 3) that the declarant's death must be the object of an inquiry in a prosecution for homicide. Johnson v. State, 63 Fla. 6, 58 So. 540 (1912).
Appellant asks us to extend this exception to the hearsay rule to cover the instant case. This we decline to do. The Judgment appealed from is affirmed.
OWEN, C.J., and CROSS, J., concur.