419 So.2d 789 (1982)
Felix TACORONTE, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-867.
District Court of Appeal of Florida, Third District.
September 28, 1982.
*790 Bennett H. Brummer, Public Defender, and Stuart R. Mishkin, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., for appellee.
Before HENDRY and DANIEL S. PEARSON, JJ., and MELVIN, WOODROW M. (Ret.), Associate Judge.
HENDRY, Judge.
Felix Tacoronte, defendant below, appeals his conviction following a jury trial, for murder in the second degree and unlawful possession of a firearm while engaged in a criminal offense.
Two friends of the victim, Palenzuela, observed Tacoronte argue with Palenzuela about a bill or ticket in a bar. Tacoronte then took a gun from under his shirt and shot Palenzuela. The two friends later identified Tacoronte as the man who shot Palenzuela and so testified at trial.
Tacoronte testified on his own behalf at trial, stating that he worked for Palenzuela bringing drugs into the country. He said he owed Palenzuela about $40,000 for one kilo of cocaine and that Palenzuela had threatened him if he did not pay. On the evening of the murder, Tacoronte had gone to the bar to get something to eat, and while there Palenzuela, intoxicated, came over and violently demanded that Tacoronte pay his debt. Tacoronte testified that he saw a gun under Palenzuela's open coat and that Palenzuela reached for it. Tacoronte then grabbed the gun, stepped back, and when Palenzuela jumped at him, fired. He struggled with one of the victim's friends, both of whom were standing nearby, and fired more shots.
*791 Defense counsel and police detective Richard Bohan arranged for Tacoronte to turn himself in on charges of first degree murder. Accompanied by counsel, Tacoronte surrendered to the sergeant on duty at the Public Safety Department, for an unrelated cocaine charge also pending against him. At trial, on cross-examination by defense counsel, detective Bohan testified as to what happened next:
At that point I told that sergeant  identified myself and told him I was taking custody of him and adding additional charges and you [referring to defense counsel] advised me not to speak to him [referring to the defendant]. I said I wouldn't.
Defense counsel moved for a mistrial on the basis that this testimony was a reference to defendant's failure to make a statement following his arrest. The judge denied the motion and gave a curative instruction to the jury.
Two other occurrences at trial are also alleged to constitute reversible error. First, during voir dire of prospective jurors, one of whom was a local school teacher, the prosecutor asked whether any of them knew the victim or his wife. He then asked, "what about the dead man's little nine year old daughter or ten year old son?" Defense counsel moved for mistrial arguing that the question was calculated to prejudice the jury. The court denied the motion, advising the prosecutor to ask the question in a more appropriate manner without arousing sympathy for the victim, and advised the jurors they must lay aside any personal feelings or sympathy in favor of or against the state or the defendant. The questioning continued:
[PROSECUTOR]: Ms. O'Neal, you are a teacher in the Dade County Public School System. Is that right?
MS. O'NEAL: Yes.
THE COURT: Do you know a little nine year old girl, Dixie Palenzuela, the daughter of Jorge Palenzuela, the dead man in the indictment?
MS. O'NEAL: No.
[PROSECUTOR]: Do you know his ten year old son, Alexius Palenzuela?
[DEFENSE COUNSEL]: Objection. Same kind of thing.
THE COURT: You understand the purpose of the question is whether you know any of these people? I do not think the children of the victim are going to participate in this case in any manner, but if you know them, we want to know. Understand that I hope that the state is not trying to provide any sympathy for their case just by mentioning the children. You must understand you must not do that.
Second, the prosecutor stated during closing argument:
[Defense counsel] says, well, that is the truth somehow. It would have been better prepared. I would suggest to you the defense lawyer has been spending four months going over and preparing for this murder trial, and it is a very important point. His whole story is self-defense. He knows he has a guy who knew his client's last name standing in the middle triangle while this happened. He knew his name was Tacoronte. He has to come up with something to counter it.
Defense counsel moved for a mistrial, stating that the remarks imputed perjury. The court admonished the jury to remember the evidence they had heard and that counsel's argument was simply that  argument. The prosecutor then continued without objection:
The defense had to come up with some story to counter the eyewitnesses, so let us create this self-defense. It makes sense, Latins. We all know every Latin in town is a big drug dealer. Let us play on the community's feeling about people that come from a Latin origin. Let us make this story up. Let us say this big drug dealing story. That is the critical issue.
We address the three issues in the order presented. First, whether detective Bohan's testimony was a comment on defendant's silence depends upon the circumstances in which it was made and whether the jury could fairly conclude that the intended *792 inference was that the defendant stood mute at that time. Gosney v. State, 382 So.2d 838 (Fla. 5th DCA 1980). Based on this standard, we hold that the statement was not a comment on the defendant's postarrest silence. Indeed, the testimony refers to a conversation which occurred, not after arrest, but as the defendant was being booked into jail, and relates instructions given the police by defense counsel not to question his client and an assurance that they would honor this request. In this context, we do not believe that the jury could fairly conclude that this testimony meant that the defendant refused to make a statement. See David v. State, 369 So.2d 943 (Fla. 1979); Gosney v. State, supra. Additionally, even assuming the testimony was improper comment on defendant's silence, we find that this case falls within the exceptions announced by the supreme court in Clark v. State, 363 So.2d 331 (Fla. 1978), holding that no error occurs when defense counsel comments upon or elicits testimony concerning the defendant's exercise of his Fifth Amendment privilege: "A defendant may not make or invite an improper comment and later seek reversal based on that comment." Id. at 335. Accord Jackson v. State, 359 So.2d 1190 (Fla. 1978), cert. denied, 439 U.S. 1102, 99 S.Ct. 881, 59 L.Ed.2d 63 (1979). Since the objectionable testimony was clearly responsive to the line of questions being asked, and was elicited by defense counsel on cross-examination, it does not constitute reversible error. See Castle v. State, 305 So.2d 794 (Fla. 4th DCA 1974), cert. denied, 317 So.2d 766 (Fla. 1975).
Second, whether the prosecutor's question to one of the jurors during voir dire regarding the victim's children is improper, depends, again, upon the full context in which it was made. Here, the context of the challenged statement related to whether a particular juror, a teacher in the public school system, knew any of the victim's school age children. The court's curative instruction to the jury that this question was not intended to evoke sympathy for the victim, but solely to determine whether any of the jurors, particularly the school teacher, might have known the victim's children, adequately cured any error which might have resulted. See Johnson v. State, 393 So.2d 1069 (Fla. 1980).
Tacoronte's final contention urges that the trial court erred in denying his motion for mistrial based on comments made by the prosecutor during final argument which allegedly imputed perjury to defendant and his counsel.
Generally, a considerable degree of leeway is allowed the prosecutor in closing argument. Thomas v. State, 326 So.2d 413 (Fla. 1975); Gosney v. State, supra; Frierson v. State, 339 So.2d 312 (Fla. 3d DCA 1976). An attorney is allowed to urge the conclusions he thinks the jury should draw from the evidence, United States v. Allen, 588 F.2d 1100 (5th Cir.), cert. denied, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979), and where there is sufficient basis in the record to support a comment, the conviction will be affirmed. Darden v. State, 329 So.2d 287 (Fla. 1976), cert. dismissed, 430 U.S. 704, 97 S.Ct. 1671, 51 L.Ed.2d 751 (1977); James v. State, 334 So.2d 83 (Fla.3d DCA 1976).
On the basis of the record before us, however, we find it unnecessary to determine whether the inference which the prosecutor attempted to draw in his closing argument was beyond the evidence,[1] since it did not materially contribute to Tacoronte's conviction. Improper remarks entitle an accused to a new trial only in those cases where the reviewing court is not satisfied beyond a reasonable doubt that the error did not contribute to a conviction. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); McMillian v. State, 409 So.2d 197 (Fla. 3d DCA 1982); James v. *793 State, supra. Here, evidence of Tacoronte's guilt was overwhelming; the self-defense issue raised by defendant's own self-serving testimony was decisively contradicted by the two eyewitnesses who testified that defendant shot the victim at point blank range several times without provocation, and a policeman immediately called to the scene who testified he found no weapons on or near the victim. Accordingly, in the context of this case, where the trial court properly instructed the jury to disregard the comments and further admonished them that argument of counsel is not evidence and they should rely solely on the evidence, we conclude that the state's argument was not so prejudicial nor fundamentally tainted as to require a new trial. Blair v. State, 406 So.2d 1103 (Fla. 1981); State v. Cumbie, 380 So.2d 1031 (Fla. 1980); Darden v. State, supra; Zamot v. State, 375 So.2d 881 (Fla. 3d DCA 1979); Johnson v. State, 348 So.2d 646 (Fla. 3d DCA 1977); Frierson v. State, supra. As the court explained in Nevels v. State, 351 So.2d 762, 763 (Fla. 1st DCA 1977):
"In any prosecution there are, of course, two parties involved; the State of Florida as the plaintiff and the person accused of crime as the defendant. They each stand before the Bar of Justice upon level ground. The defendant is entitled to a fair and an impartial trial. By the same token, the State of Florida, representing its citizenry, is likewise entitled to a fair and impartial trial. Neither the State of Florida nor any defendant may, within reason, expect to receive a perfect trial in any tribunal in which mortals preside. In nearly every adversary proceedings, some technical error may be found. Unless error reaches to and affects in a prejudicial manner the rights of a party to a fair and impartial trial, such error is harmless and does not infect the validity of the proceedings."
"One of the stated purposes of those who put together the fabric of the Constitution of the United States was to `establish justice' and insure `domestic tranquility'. [Emphasis supplied.] Such noble purposes were not reserved just to those accused of crime. They spread as a mantle of protection for the citizenry in general."
No reversible error having been demonstrated, upon full consideration of the record, briefs, and argument in this case, the conviction is affirmed.
Affirmed.
DANIEL S. PEARSON, Judge, dissenting.
We recently reversed convictions because the prosecutor in closing argument told the jury, "Don't let [the victim] with three children and a wife walk away without justice in this case...," Gomez v. State, 415 So.2d 822 (Fla. 3d DCA 1982), and "all [the defendant] did was kill a wino and he is sorry and so is [the victim's] wife and three children," Harper v. State, 411 So.2d 235 (Fla. 3d DCA 1982). We held, consistent with long-standing law on the subject, that such arguments are calculated to make the jury decide the case on their emotions rather than the evidence and are improper appeals for sympathy.
I see little difference between the State's closing arguments in Gomez and Harper and its voir dire in the present case. All had the single purpose of getting before the jury the fact that the victim has or had young children, a fact that is totally irrelevant to the defendants' guilt or innocence of the charges.
The ostensible justification here is that the prosecutor wanted to learn from one of the venire, a schoolteacher by the name of Mrs. O'Neal, whether she knew the victim's children. The record simply does not bear out the sincerity of the inquiry. Neither the victim's wife nor children were to testify in the trial. Yet, in voir dire, under the guise of identifying the wife of the victim to the potential jurors, the prosecutor asked:
"Married the last twelve years to Virgin Palenzuela. Virgin Palenzuela, do you know her? That is the dead man's wife. She came over eighteen years ago from Cuba. They have been married for about *794 the last twelve years. Anybody know her?"
and followed with:
Prosecutor: "What about the dead man's little nine year old daughter or ten year old son?"
Defense Counsel: "Objection. I move for a mistrial on that one. I move for a mistrial."
Defense Counsel, at bench conference: "[He] is one of the most improper prosecutors I have seen in a long time. I even hear the mumbling of the jury now. That was calculated to prejudice this jury. It is not relevant to this case, has nothing to do with this case."
Prosecutor: "I want to know if he knows these people."
Defense Counsel: "It is very fortunate that we just started the trial now. The Court can excuse this panel."
It was not until he was called to task by defense counsel's motion to discharge the panel that the prosecutor seized upon a post-hoc explanation for his question concerning the children in the person of Mrs. O'Neal, the schoolteacher. But Mrs. O'Neal had not been asked where she taught school or the grades she taught so as to make it even remotely likely that she knew or had any contact with these children. And after his transparent question about the victim's children had accomplished its purpose, the prosecutor showed no interest in further questioning Mrs. O'Neal to determine if she knew these children.
I do not believe we should condone this subterfuge. I do not think it appropriate to adopt a rule of law that because a prospective jury panel includes a schoolteacher or, for that matter, anyone whose occupation brings him into contact with children, it is fair game for the prosecutor to bring before the panel facts about the children of a crime victim. If indeed the prosecutor has a genuine concern about a juror being prejudiced one way or the other in a case because he or she may know the children of a victim, and a proper predicate is laid, then I am certain this concern can be accommodated through a voir dire of the individual venireperson in the absence of other potential jurors.
I think the prosecutor's closing argument was equally reprehensible. It is inescapable that the prosecutor blatantly accused defense counsel of suborning perjury and the defendant of committing perjury. That such remarks, calculated to unfairly prejudice the jury against the defendant, are improper and constitute professional misconduct is not really open to debate. Johnson v. United States, 162 F.2d 562 (9th Cir.), rev'd on other grounds, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947); Weathers v. United States, 117 F.2d 585 (5th Cir.1941); People v. Montevecchio, 32 Mich. App. 163, 188 N.W.2d 186 (1971); Reidy v. State, 8 Md. App. 169, 259 A.2d 66 (1969); State v. Davit, 343 Mo. 1151, 125 S.W.2d 47 (1939); Garza v. State, 130 Tex.Cr.R. 401, 94 S.W.2d 439 (1936); Criglow v. State, 183 Ark. 407, 36 S.W.2d 400 (1931); Newton v. State, 147 Md. 71, 127 A. 123 (1924). See also Adams v. State, 192 So.2d 762 (Fla. 1966); Glassman v. State, 377 So.2d 208 (Fla. 3d DCA 1979); Fla.Bar Code Prof.Resp. E.C. 7-37 ("A lawyer should not make unfair or derogatory personal reference to opposing counsel. Haranguing and offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system."). While such remarks have been broadly condemned as being calculated to unfairly prejudice the jury against the defendant, Reidy v. State, supra; Criglow v. State, supra; Newton v. State, supra; prejudicial "mud slinging," Garza v. State, supra; offensive to the dignity of the court, State v. Davit, supra; and as making defense counsel's argument to the jury on behalf of the defendant unworthy of consideration and belief, Weathers v. United States, supra, it seems to me that the essential wrong of the argument is that the defendant's denial of guilt is not a fabrication of evidence and, most assuredly, not a subornation of perjury by defense counsel, simply because the denial of guilt is in conflict with the State's proof of the commission of the crime. It is only when a defendant's statement is shown to be false *795 by proof independent of the proof of the commission of the crime, see Douglas v. State, 89 So.2d 659 (Fla. 1956); Brown v. State, 391 So.2d 729 (Fla. 3d DCA 1981), and cases collected therein; or by proof of an actual effort to suborn perjury, United States v. Jones, 578 F.2d 1332, 1338 (10th Cir.1978), that we allow juries to consider the falsity as additional substantive evidence tending to establish the defendant's guilt of the crime charged. Where there is no such proof of perjury or subornation, the argument that such exists is an argument totally unsupported by any evidence. See Reidy v. State, supra (argument that defense counsel suborned perjury not disclosed by any evidence in the case); People v. Montevecchio, supra (argument that defendant and his witnesses had perjured themselves is a statement of fact which must be made by a witness, not a prosecutor). It is one thing for a prosecutor to suggest that the defendant's story is not credible in the face of the State's evidence of his guilt. It is quite another thing to suggest that the defendant's story is not to be believed because he and his attorney got together and cooked it up.
The remaining question is whether the trial court's failure to negate the impact of these remarks through an instruction to the jury requires reversal. Tacoronte's defense was self-defense. The prosecutor's remarks were that this defense was made up or fabricated by defense counsel during the four months of preparing for trial and the concoction put into effect by the defendant's testimony at trial. Admittedly, there was strong evidence to negate Tacoronte's claim of self-defense. Nonetheless, the jury should have been permitted to assess that claim and the defendant's testimony free of the prosecutor's pernicious comments.
I do not disagree that the error of the prosecutor's remarks might have been cured had the remarks been effectively neutralized by the trial court in an admonition to the jury appropriately informing them of the impropriety. Had that been done, then we could conclude that the outcome of the case was not influenced by the prejudicial comments.
"[A] significant factor in determining whether the jury were likely to have been misled or influenced to the prejudice of the accused by an improper remark [by the prosecutor] is whether the trial court took appropriate action to overcome a likelihood or prejudice, e.g., informing the jury that the remark was improper, striking it and admonishing them to disregard it." Holbrook v. State, 6 Md. App. 265, 270, 250 A.2d 904, 907 (1969).
When the prosecutor is thus rebuked and the jury admonished, a finding that the initial prejudice has been ameliorated is possible. Garza v. State, supra, 94 S.W.2d at 441; Criglow v. State, supra, 36 S.W.2d at 402; Esterline v. State, 105 Md. 629, 66 A. 269, 272 (1907). But such a finding is not, in my view, possible where the court benignly instructs the jury, as it did:
"You must remember the evidence that you heard and, as I told you before, argument of counsel is not evidence but is only that, argument."
This instruction does nothing to rebuke the prosecutor or point out the impropriety of the remarks. The trial judge's duty to firmly and decisively give a curative instruction is seldom carried out by the reminder that argument of counsel is not evidence. Harper v. State, supra, 411 So.2d at 236-37. The instruction given conveys only the idea that argument is not evidence, not that the argument itself is wrong.
"When it is made to appear that a prosecuting officer has overstepped the bounds of that propriety and fairness which should characterize the conduct of a state's counsel in the prosecution of a criminal case, or where a prosecuting attorney's argument to the jury is undignified and intemperate, and contains aspersions, improper insinuations, and assertions of matters not in evidence, or consists of an appeal to prejudice or sympathy calculated to unduly influence a trial jury, the trial judge should not only sustain an objection at the time to such improper conduct when objection is offered, but should so affirmatively rebuke *796 the offending prosecuting officer as to impress upon the jury the gross impropriety of being influenced by improper arguments." Deas v. State, 119 Fla. 839, 161 So. 729, 731 (1935) (emphasis supplied).
See also Ruiz v. State, 395 So.2d 566 (Fla. 3d DCA 1981), and cases cited therein.
Finally, because the trial court left the prosecutor's remarks uncured and because the evil of these remarks was to bias the jury against the defendant, I think the harmless error doctrine is as inapplicable here as it is in any case where the reliability of the fact-finding process is affected. No matter what the evidence was against him, Tacoronte had a right to have an impartial jury assess it. Cf. Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (due process does not permit any "procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused.").
I would reverse.
NOTES
[1] On cross-examination the prosecutor questioned Tacoronte as to whether a possible twenty-five year sentence of imprisonment would motivate him to lie on the witness stand. See Francis v. State, 384 So.2d 967 (Fla. 3d DCA 1980), for the proposition that under Rule DR 7-106(C)(4), Code of Professional Responsibility, counsel may argue, on his analysis of the evidence, for any position or conclusion with respect to the credibility of a witness.