979 So.2d 1246 (2008)
Victor JOYNER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-1668.
District Court of Appeal of Florida, Fourth District.
April 30, 2008.
Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.
*1247 Bill McCollum, Attorney General, Tallahassee, and Sue-Ellen Kenny, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
Joyner appeals a judgment and sentence for possession of hydrocodone and alphrazolam. He asserts that testimony by a state's witness was susceptible of being interpreted as a comment on his right to remain silent and failure to produce evidence.
As there was no motion to strike, the defense asserts fundamental error. Affirming, we conclude that even if the comments, which occurred during cross-examination, were improper, the testimony was invited by defense counsel's inquiry.
The state's main witness was Detective Farrell, who executed a search warrant where Joyner was found. While searching Joyner's bedroom, Farrell found a pill bottle, with Joyner's name on it, containing Zanex and six Hydrocodone pills. The trial centered on the credibility of Farrell's testimony.
The state, on direct examination, asked Farrell about Joyner's statements to him:
Q. Now, you mentioned you had conversations with the defendant. Did you read him his Miranda rights?
A. Yes.
Q. Did you read them off a card?
A. I read them off a card itself.
Q. Can you tell the jury how you read it?
A. After each right, I asked him if he understands. The defendant says "yes" or "no."
After that, he agreed to talk to me. The defendant was very cooperative in talking to me. He basically wanted to work off his charges.
* * *
Q. Can you tell us what questions you asked?
A. I asked how long he had been selling cocaine from his house. He said a couple of months.
I asked him how much he makes. He said $150 a day. He is doing it to get by, to make some money to get by.
I asked him about the pills, themselves. He said he has a heroin problem. On the street, heroin is expensive, so he started to do prescription drugs. You get them two for five bucks on the street.
Q. Did he tell you where he got the prescription drugs?
A. That's what we were discussing. Then he said he was going to talk to his attorney to see if he could work off the charges.
Q. If you can, just answer the questions that I ask. Did he tell you where he got the prescriptions?
A. Off the street.
Q. Did he say whether he had a prescription for those drugs?
A. No prescription.
Q. He acknowledged those drugs were his?
A. Yes. The pills, the prescription was his.
Q. Did you ask him whether or not he lived in the home?
A. He said he lived there.
Joyner's trial counsel then cross-examined Farrell:
Q. You are presuming Mr. Joyner resided there?
A. No. Mr. Joyner told me, "I live there.". . . .

*1248 Q. Let's talk about those statements. Those statements were taken at the scene, correct?
A. Yes.
Q. Those are statements that you said you got in anticipation of using them here in court, correct?
A. As far as talking to them, yes, it is used in court.
Q. That is part of the Miranda warnings. "Anything you say may be used against you." So those are important?
A. Correct, correct.
Q. You have the ability . . . to take him to the station to record those statements?
A. Correct.
* * *
Q. You have the ability to make an audio recording?
A. Yes.
Q. Just a tape recording?
A. Yes.
Q. That could have been done on scene?
A. I don't normally do it on scene. They are reluctant to talk to us on the scene.
Q. But in this instance, you said he talked to you?

A. As far as the recorder, I don't do it on the scene.
Q. Well, you had an opportunity to do it. You could have taken him to the station.
A. In the interview room, he was reluctant to do it on audio. He wanted to talk to his attorney first.

Joyner's trial counsel also cross-examined Farrell about his failure to record the names of two women who were at the apartment with Joyner.
Q. So you didn't list them because they are not relative [sic] to you?
A. I didn't need them as witnesses. No, I did not.
* * *
Q. Despite they may have information that may be helpful to the State or defense or even law enforcement, you didn't list them?
A. If you want to talk to them, I am sure the defendant knows their names. I didn't need them as witnesses in my report.

Comments that are "fairly susceptible" of being interpreted as a comment on the defendant's right to remain silent "will be treated as such." Grier v. State, 934 So.2d 653, 655 (Fla. 4th DCA 2006) (citing State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986)). Whether such a comment is improper depends on the context in which it was made. Gosney v. State, 382 So.2d 838 (Fla. 5th DCA 1980). For example, where a defendant does not remain silent at the time of arrest, the constitutional right to remain silent has been found not to have been exercised. See, e.g., Holmes v. State, 565 So.2d 824, 825 (Fla. 4th DCA 1990); Fernandez v. State, 786 So.2d 38, 40 (Fla. 3d DCA 2001); Ivey v. State, 586 So.2d 1230, 1234 (Fla. 1st DCA 1991); Watson v. State, 504 So.2d 1267 (Fla. 1st DCA 1986).
In San Martin v. State, 705 So.2d 1337 (Fla.1998), our supreme court concluded that San Martin did not exercise his right to remain silent where, on direct examination by the state, a deputy testified that he advised San Martin of his Miranda rights and that "San Martin gave an oral statement recounting his involvement in the robbery and shooting, but refused to give a stenographically recorded statement." Id. The court explained the context as follows:

*1249 "[t]he accuracy and integrity of oral incriminating statements are frequent targets of defense counsel who often suggest an unfairness of the use of oral statements of an accused who has not been afforded the opportunity to put his statement in writing. It is only reasonable that the state be permitted to elicit the fact that the accused was given the opportunity and declined."
Id. at 1346 (quoting McCoy v. State, 429 So.2d 1256, 1257 (Fla. 1st DCA 1983)). Therefore, the court agreed with the trial court, which found "that under the circumstances, San Martin's refusal to give a formal recorded statement was not an exercise of his right to remain silent." Id.
In Smith v. State, 754 So.2d 54 (Fla. 3d DCA 2000), after Mirandizing Smith, the detective,
asked him whether he had been involved in the robbery, and Smith replied by asking [the detective] whether "anybody had seen a car leave." Detective . . . responded that somebody had and Smith then stated "well, you got me on that." During the trial, the prosecution, twice on direct and once on rebuttal, asked [the detective] whether Smith had given a stenographically recorded statement. Detective . . . testified that he requested such a statement but Smith had refused.
Id. at 55. The Third District distinguished between a prosecutor presenting such a testimony "to explain why the statement had not been stenographically recorded" and "emphasiz[ing] Smith's refusal to give such a statement by making repeated references to the refusal . . . and then arguing in closing that `[w]e know that the defendant did not want to give a [stenographic] statement and the reason should be rather obvious to you.'" Id. at 56.
With regard to burden shifting, the supreme court, in Jackson v. State, 575 So.2d 181, 188 (Fla.1991), explained that "the state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence." See also Rodriguez v. State, 753 So.2d 29, 37 (Fla.2000) (the "State may not comment on a defendant's failure to mount a defense because doing so could lead the jury to erroneously conclude that the defendant has the burden of doing so.").
However, it is well recognized that a defendant "may not make or invite an improper comment and later seek reversal based on that comment." Clark v. State, 363 So.2d 331, 335 (Fla.1978), overruled on other grounds by DiGuilio, 491 So.2d at 1137 n. 14. In Tacoronte v. State, 419 So.2d 789 (Fla. 3d DCA 1982), defense counsel cross-examined a detective on what happened when Tacoronte turned himself in: "At that point I told that sergeant-identified myself and told him I was taking custody of him and adding additional charges and you [referring to defense counsel] advised me not to speak to him [referring to the defendant]. I said I wouldn't." Id. at 791 (alterations in original). Arguing that "this testimony was a reference to defendant's failure to make a statement following his arrest," defense counsel unsuccessfully moved for a mistrial. Id.
On appeal, the court commented:
even assuming the testimony was improper comment on defendant's silence, we find that this case falls within the exceptions announced by the supreme court in Clark v. State, 363 So.2d 331 (Fla.1978), holding that no error occurs when defense counsel comments upon or elicits testimony concerning the defendant's exercise of his Fifth Amendment privilege[.]
*1250 Id. ("Since the objectionable testimony was clearly responsive to the line of questions being asked, and was elicited by defense counsel on cross-examination, it does not constitute reversible error.").
In Castle v. State, 305 So.2d 794, 797 (Fla. 4th DCA 1974), in affirming the judgment, this court reasoned that:
[t]he answer given by the arresting police officer was clearly responsive to the line of questions being asked. It was not volunteered, but rather was solicited by the questions posed by Appellant's own counsel. Appellant's lawyer attempted to find out from this witness why the accused had been arrested by this witness on one date and not another, and the witness gave his reason, [that on the earlier date he had tried unsuccessfully to get a statement]. Consequently, there is no error to complain about in the first place. A criminal defendant may not take advantage on appeal of an error which he himself induced at trial[.]
Similar to the invited comments on silence, the defense may invite a burden-shifting comment by the state. See, e.g., Mitchell v. State, 678 So.2d 1362, 1363 (Fla. 1st DCA 1996) ("[W]e conclude that the prosecutor's [burden-shifting] remarks were an invited, fair reply to initial remarks made by defense counsel and, when considered in context, did not constitute prejudicial error so as to require a new trial.").
Here, similar to the San Martin and Fernandez comments, the first challenged comment was directed at explaining why Farrell did not record Joyner's statement and did not amount to the state asserting that Joyner's silence should be used against him.
We have considered Grier, and deem it inapposite. In Grier, on direct examination, the state asked the interviewing officer whether Grier would give a recorded statement, and the officer answered, "`No, he wouldn't. And that  He thought about it for a while. And then he said, `No. I'd rather have an attorney present.'" Grier, 934 So.2d at 654. "Later, the officer again mentioned Grier's requests for an attorney. . . ." Id.
Recognizing that the state could properly head off a defense suggestion that his oral statement should be disregarded because it was not recorded, this court, nonetheless, found error because the officer's statement "went beyond explaining that Grier refused to go on tape; the officer also added the fact that Grier stated, `No. I'd rather have an attorney present.'" Id. at 655.
In Grier, however, the officer's comment on the defendant's right to an attorney was elicited by the state on direct examination and again repeated by the state. Here, defense counsel elicited the officer's response while cross-examining the state's witness, thus inviting the error of which he now complains. Similar to the officers' responses in Tacoronte and Castle, Farrell's response was solicited by defense counsel on cross-examination. Joyner's counsel attempted to find out from Farrell why Joyner's statement was not recorded, and the officer gave his reason.
Further, Farrell's second comment is not a comment on Joyner's failure to produce evidence. Answering that Joyner likely knows the names of two women whom Farrell did not list as witnesses was not, as Joyner argues, a "statement[ ] regarding Appellant's obligation to produce the names of witness[es]," and did not appear to lead the jury to believe that Joyner carried the burden of introducing evidence. Further, even if the reply was an improper burden-shifting comment and was not an invited error, the comment fails *1251 to constitute fundamental error. See generally McDonald v. State, 743 So.2d 501, 505 (Fla.1999).
Therefore, the judgment and sentence are affirmed.
STEVENSON and TAYLOR, JJ., concur.