DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DAVID O'BRIEN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D22-1643

[July 19, 2023]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Jill K. Levy, Judge; L.T. Case No. 21012385MU10A.

Gordon Weekes, Public Defender, and Lisa S. Lawlor, Assistant Public Defender, Fort Lauderdale, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Anesha Worthy, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

This appeal turns on one word: preservation. The defendant appeals his conviction and sentence for driving under the influence of alcohol. He argues the trial court erred in two ways: (1) its rulings during voir dire; and (2) overruling defense counsel's objection to the State's closing argument. The first issue was not preserved, requiring us to affirm. We affirm the second issue because the trial court's ruling was correct.

### *FACTS*

The State charged the defendant with driving under the influence of alcohol after he crashed his car into a fixed metal fence and poorly performed a field sobriety exercise.

- ### *"Pre-trying" the Case*

The defendant first argues the trial court erred in overruling his objection to the State "pre-trying" the case. The State responds its

questioning of the venire did not constitute "pre-trying" the case. We agree with the State and affirm on this issue.

During voir dire, the State asked the prospective jurors if they thought driving under the influence of alcohol was drunk driving. A few jurors answered in the affirmative. The State commented driving under the influence of alcohol is impairment under Florida law.

Then, for illustration, the State asked a juror whether she could still see when she takes her glasses off. The juror responded she can see people and objects that are close, but the further away they are, the blurrier the image becomes. The State then said, "So, you're not blind, you're just impaired." The juror answered in the affirmative.

The State then asked the jurors about what observations they make about people who have been drinking alcohol. The jurors mentioned walking off balance, slurring speech, speaking at a loud volume, being uncoordinated, and being overconfident. The State then added its own observations: "They could have bloodshot eyes. You could smell the alcohol."

Defense counsel objected. "This actually [is] a misstatement of the law. He's talking about the effects of [drinking] alcohol as opposed to the impairment." The trial court overruled the objection.

The State then asked another juror to imagine he decided to call in sick from work and go to Best Buy. But at Best Buy, the juror ran into his boss. His boss, seeing the juror had lied to skip work, revealed he had a thermometer on him and offered to take his temperature.

The State asked the juror: "Would you put the thermometer in your mouth" and allow your boss to take your temperature? The juror responded, "[i]n this case, probably not." Defense counsel objected, arguing the State was "pre-trying" the case. The trial court overruled the objection. The State continued its hypothetical:

> Probably not right? Because you know that you're not . . . going to have a temperature. And that's the concept that call – that's called consciousness of guilt. You don't want to take the temperature because you know that you're not going to have one.

- ***Juror Challenges***

2

Second, the defendant challenges the trial court's decision to strike a juror for cause. The defendant also challenges the trial court's decision to deny the defendant an extra peremptory challenge to strike another juror.

o *The First Juror*

The defendant used a cause challenge on a juror, arguing the juror had said she would give a law enforcement witness the benefit of the doubt.

> **The State**: Would you give police officers a – more credibility or would you treat them just like anybody else – at least until you heard the testimony?
>
> **Juror**: I'd give them more credibility . . . That's the result of my being in law enforcement for thirty years . . . .
>
> . . . .
>
> **The State**: And during that time, any of them, you came in contact with some law enforcement officers that weren't so good, didn't you?
>
> **Juror**: Absolutely.
>
> **The State**: You came in contact with some law enforcement officers that weren't fully truthful?
>
> **Juror**: Yeah . . . .

Upon hearing the juror's responses, the trial court intervened to ensure the juror understood her role in giving weight to a witness's testimony.

> **The Court**: And hold on. Let me just follow up . . . . I know because of your career as a federal agent, you'd like to believe a police officer that took the stand –
>
> **Juror**: Um-hum (affirmative.)
>
> **The Court**: – you would give that a little bit more weight because they are a police officer? Is that correct?
>
> **Juror**: I'm saying under oath, if you go up there and you – I wouldn't say it was like more weight. I – It's – It's – I would take away the fact that they're a police officer. And you know,

3

we take our own oath to the constitution when we're hired.  So –

**The Court**:  Right.  But when – would you wait to hear the police officer's testimony under oath to decide whether you believed it or not?

**Juror**:  Well, yeah.  See if he's credible or he's credible or not.

**The Court**:  Okay.  Because I think [the] question was "Would you believe what the officer said because he's an officer?"  Or would you wait to hear what he has to say to decide whether you believe it?

**Juror**:  That's tough.  I'd wait to hear what they have to say.  But I definitely –

**The Court**:  You'd like to give him

**Juror**:  – have a lot of faith –

**The Court**:  – benefit of the doubt.

**Juror**:  – in law enforcement.  I have a lot of faith in law enforcement.

**The Court**:  Okay.  All right.  Thank you.

The juror also revealed her husband was currently a federal agent, and she had many close friends in law enforcement.

The trial court denied the cause challenge, stating the juror had been rehabilitated when she said, "she would wait to hear the testimony." Defense counsel later used a peremptory challenge to strike the juror.

   o  *The Second Juror*

After the jury panel was selected, instead of accepting the panel, defense counsel asked for an additional peremptory strike to use against a second juror because of her positive experiences with law enforcement. After asking the State's position, which was that "one interaction with a police officer" was insufficient reason to strike her, the trial court denied defense counsel's request for an additional peremptory with which to strike her.

4

o *The Third Juror*

The State used one of its peremptory strikes against a third juror based on the following exchange:

> **The State**:  Okay. Does anyone else have any other story that they'd like to share?
>
> **Juror**:  I get pulled over a lot for bogus reasons.
>
> **The State**:  Okay. So, do you – would you say that all police officers are bad?
>
> **Juror**:  I don't think that all police officers are bad.
>
> **The State**:  Okay.  It depends on that person, right?
>
> **Juror**:  Yeah.

Defense counsel asked for a race-neutral reason to strike the third juror.  The State reasoned there would be "concerns that [the third juror] would be biased against law enforcement for the fact that he's always getting pulled over for no reason by officers."

Defense counsel argued this was not race neutral:  an African American who felt he was getting pulled over for bogus reasons is saying they got pulled over because they are African American.  But the State responded the third juror rehabilitated himself by saying, "I don't think that all police officers are bad."  Moreover, the third juror stated he would be able to follow the law and be fair.  The trial court accepted the State's reason as race-neutral and struck the juror.

Defense counsel immediately thereafter accepted the panel subject to only one prior objection, "specifically the striking of [the third juror]."

- **Closing Argument**

And last, the defendant challenges the trial court's decision to overrule his objection to the State's alleged burden-shifting argument.  During closing arguments, the State mentioned the defendant refused to provide a breath sample and reminded the jurors of his consciousness of guilt story during voir dire—about the man who got caught calling in sick to work but then refused to have his temperature taken.

The State told the jury "the defense attorney may use the refusal as a way to convince you that the State didn't meet its burden." The trial court overruled defense counsel's objection. The State continued, "the defendant said no to that breath test all to keep everyone knowing how much he had to drink that night . . . that's called consciousness of guilt. He certainly didn't want to know the number of drinks he had that night."

Defense counsel again objected to burden shifting. He also objected to a comment made by the State on the defendant's right to remain silent. The trial court overruled that objection as well. The State persisted, arguing:

> [The defendant] didn't want the officers to know that night how much he had to drink, and he certainly didn't want you to know how much he had to drink that night. And why was he suffering from consciousness of guilt that night? Because he knew how much he had to drink[.]

The jury found the defendant guilty. The trial court adjudicated him guilty and sentenced him to twelve months' probation.

From his conviction and sentence, the defendant now appeals.

The defendant raises three arguments regarding voir dire. First, the trial court erred in overruling defense counsel's objection to the State allegedly "pre-trying" the case. Second, the trial court improperly denied the defendant's cause challenge against the first juror and request for an additional peremptory strike against the second juror. And third, the trial court improperly found the State's reason to strike the third juror race neutral.

The State responds some of the defendant's arguments were unpreserved and refutes the defendant's arguments on their merits. First, the trial court did not err in overruling defense counsel's objection to the State pre-trying the case. Second, the trial court properly denied the defendant's cause challenge against the first juror and request for an additional peremptory strike against the second juror. And third, the trial court properly found the State's reason to strike the third juror was race neutral.

6

## ANALYSIS

We review a trial court's rulings during voir dire for an abuse of discretion. *Deviney v. State*, 322 So. 3d 563, 570 (Fla. 2021), *reh'g denied*, No. SC17-2231, 2021 WL 3674480 (Fla. Aug. 19, 2021), *cert. denied sub nom*, 142 S. Ct. 908 (2022).

- ### *Pre-Trying the Case*

The defendant first argues the State "pre-tried" the case when it asked the jurors questions about impairment. To preserve a jury selection issue for appeal, the party raising the issue must renew their objection before the trial court swears in the jury. *Berry v. State*, 792 So. 2d 611, 612 (Fla. 4th DCA 2001).

Here, the record reveals that did not occur. The defendant objected only once. He did not later renew his objection. In short, the defendant failed to preserve the issue. *See id.*

- ### *Juror Challenges*

  - #### *The First and Second Jurors*

The defendant next argues the trial court erred in denying defense counsel's cause challenge to the first juror. Further, he argues the trial court compounded the error in denying the defendant an extra peremptory strike against the second juror. The State responds this issue is unpreserved. We agree.

"Generally, to prevent a waiver of a juror challenge issue, the opponent must call the court's attention to its objection, if there was an earlier objection, before the jury is sworn." *Arnold v. State*, 755 So. 2d 696, 698 (Fla. 4th DCA 1999). "This is done either by renewing its motion or by accepting the jury subject to the earlier objection." *Id.* To preserve for appeal a denial of a challenge to a juror for cause, it is necessary to exhaust all remaining peremptory challenges, request additional peremptory challenges, and identify to the trial court which juror the party would have stricken "had the peremptory challenges not been exhausted." *Griefer v. DiPietro*, 625 So. 2d 1226, 1228 (Fla. 4th DCA 1993).

Here, the record reveals after the trial court denied the defendant's request for an additional peremptory strike to use against the second juror, the defendant accepted the jury, including the second juror, without renewing his motions or explicitly accepting the jury subject to his request

to exercise a cause challenge on the first juror and an additional peremptory strike on the second juror. The defendant only renewed his objection regarding the third juror. He therefore failed to preserve his objection to the trial court's rulings on the first and second jurors.

o *The Third Juror*

The defendant next argues the trial court erred in accepting the State's reason for striking the third juror. "A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike." *Melbourne v. State*, 679 So. 2d 759, 764 (Fla. 1996).

Here, the record establishes the trial court followed the three-step *Melbourne* process. It heard from the State and the defendant, who opposed the strike. The State gave a race-neutral reason. And the trial court determined the State's reason was not a pretext.

As the party opposing the strike, the defendant then had the burden to prove purposeful racial discrimination. *See id.* The defendant was also required to challenge the genuineness of the State's proffered race-neutral reason and make a specific objection to the reason. *State v. Johnson*, 295 So. 3d 710, 714 (Fla. 2020).

Here, the defendant did not do so. Although he initially claimed the State's reason was not race neutral "[g]iven the state of our society and the over-policing of minority areas," the State responded this was not a legal argument. The trial court asked the State whether it was alleging the third juror was indiscriminately pulled over because of his race. The State answered "no." Rather, the State was concerned the third juror would be biased because the police repeatedly pulled him over, thereby leading the third juror to believe that police stops were unjustified.

The defendant did **not** challenge the State's proffered race-neutral reason. The defendant did not place the trial court on notice he was contesting the factual existence of the State's reason. The defendant failed to preserve the issue.

The defendant argues we must reverse because the genuineness of the State's proffered reason "must be questioned." He failed, however, to make this challenge in the trial court. Because he never objected to the

8

genuineness of the State's reasoning below, this issue is not preserved for appellate review.  *See Johnson*, 295 So. 3d at 714–16.  We must affirm.

- ***Closing Argument***

The defendant last argues the trial court erred in overruling his objection to the State's comment about the defendant's refusal to take a breath test.  The State responds the trial court properly overruled defense counsel's objection because the State did not implicate the defendant's right to remain silent.  We agree with the State.

We review trial court decisions on closing arguments for an abuse of discretion.  *Robinson v. State*, 211 So. 3d 59, 60 (Fla. 4th DCA 2017).

"It is well settled that due process requires the [S]tate to prove every element of a crime beyond a reasonable doubt."  *Warmington v. State*, 149 So. 3d 648, 652 (Fla. 2014) (quoting *Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991)).  "For that reason, it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt."  *Id.* (quoting *Gore v. State*, 719 So. 2d 1197, 1200 (Fla. 1998)).

Here, the State's closing argument focused on the evidence; specifically, the defendant's refusal to submit to breath testing and the reasonable inference drawn from that evidence—his consciousness of guilt.  The record does not support the defendant's burden-shifting argument.

The State argued the defendant's refusal to submit to testing indicated his consciousness of guilt.  Because the State focused on his refusal to submit to testing instead of whether he demanded testing to prove his innocence, the argument was proper.  *See Morris v. State*, 988 So. 2d 120, 123 (Fla. 5th DCA 2008).

Section 316.1932(1)(a)(1)(a), Florida Statutes (2021), and relevant case law make it clear the Fifth Amendment does not apply to the refusal to submit to testing.  *State v. Taylor*, 648 So. 2d 701, 704 (Fla. 1995).  The law expressly allows the State to comment on this issue even though a criminal defendant usually has the right to remain silent.

Lastly, to the extent the defendant challenges the State's comments about the number of drinks he had, the State submits this was not an improper comment on his right to remain silent, because he did not actually remain silent.  As we have noted, "where a defendant does not

remain silent at the time of arrest, the constitutional right to remain silent has been found not to have been exercised." *Joyner v. State*, 979 So. 2d 1246, 1248 (Fla. 4th DCA 2008).

Because the State commented on facts in evidence and did not comment on the defendant's right to remain silent, there was no error in the trial court's rulings.

*Affirmed.*

WARNER and GERBER, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**