ALTENBERND, Judge.
Roderick Washington appeals his convictions and sentences for two counts of aggravated battery with a deadly weapon, two counts of first-degree felony murder, and two counts of kidnapping — all offenses having occurred when he was a juvenile. We affirm the convictions without discussion. We also affirm the sentences imposed for the two counts of aggravated battery with a deadly weapon without discussion. For the reasons explained below, we reverse the sentences for the two felony murders and kidnappings and remand for a new sentencing hearing.
I. The Facts and Procedural History
The record in this case reflects that forty to fifty teenagers and young adults *2 attended a party in Lee County on October 6, 2006. Many of the attendees openly used alcohol and illegal drugs at this party. At one point in the evening, some of the partygoers decided to physically attack Jeffrey and Alex Sosa, who were also in attendance at the party. Mr. Washington was involved in the attack. He participated in beating the victims and watched as others hogtied them. He then stood guard over the victims, pointing guns at them and poking them with his weapons while others carved gang initials in their backs with a knife and poured bleach on the wounds. Mr. Washington and others held the two victims captive and tortured them at the house for two and one-half hours before he and another perpetrator carried the victims out of the house, placed them in the trunk of a car, and rode along as they were transported to an industrial park. There, the victims were shot and killed. Although Mr. Washington did have a weapon during these events, the evidence indicated that other perpetrators actually committed the murders.
At an initial trial, the jury found Mr. Washington guilty of the aggravated batteries, but reached no verdict on the other charges. At a second trial, the jury found that he was guilty of both kidnappings and both felony murders, but they specifically found that he did not actually commit the murders. The trial judge sentenced Mr. Washington to fifteen years on each of the aggravated batteries and life without possibility of parole on the kidnappings and first-degree felony murders, with all sentences to be served consecutively.
II. The Felony Murder Sentences
This case stands in stark contrast to the facts discussed in Arrington v. State, — So.3d-(Fla. 2d DCA 2012), which we are releasing simultaneously with this opinion. Mr. Washington was nearly eighteen at the time of these offenses. The criminal acts involved exceptional cruelty, and Mr. Washington’s participation was extensive. The trial court’s decision to impose these sentences consecutively, as compared to concurrently, reflects the trial court’s assessment of Mr. Washington’s culpability.
In Arrington, we have reversed a similar felony murder sentence and remanded for a case-specific consideration of whether the juvenile defendant may qualify for relief from a cruel and unusual sentence. We have considered whether this court could rule that Mr. Washington’s life-without-parole sentences for the felony murder convictions are constitutional on the face of this record and have concluded that due process would be better served if the trial court is allowed to exercise its own judgment on the proportionality of these consecutive sentences. Accordingly, we reverse these sentences. As explained in Arrington, on remand, the court is required to resentence Mr. Washington to life without possibility of parole for these homicides unless it determines under the facts of this case that such a penalty is disproportionate. In so ruling, we do not hold that life without possibility of parole would be disproportionate in this case.
III. The Kidnapping Sentences
Whether the sentences of life without possibility of parole for the two kidnappings are authorized depends on the sentences ultimately imposed for the two felony murders. We are not required to reverse these sentences under the Supreme Court’s holding in Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). Employing a categorical approach, the Supreme Court in Graham held that life without possibility of parole was a cruel and unusual punishment for all juvenile offenders who commit nonhomicide offenses. Graham, 130 S.Ct. at 2030. In so holding, it noted an excep *3 tion for juveniles who commit nonhomicide offenses in conjunction with homicide offenses. See id. at 2023.[1] Because the homicide offense can be an aggravating factor in the sentencing of the nonhomi-cide offense, the Supreme Court indicated that a life sentence without possibility of parole for a nonhomicide offense could be constitutional if it accompanied an authorized sentence of life without possibility of parole for a homicide offense. See id.
Thus, the constitutionality of Mr. Washington’s two life sentences without parole for the kidnappings probably hinges on whether the trial court, on remand, imposes life without parole for felony murders. Accordingly, we reverse these sentences and remand with instructions for the trial court to resentence for these offenses after it determines the appropriate sentences for the felony murders.
Affirmed in part, reversed in part, and remanded with instructions.
KELLY and CRENSHAW, JJ., Concur.

. In dicta, the Supreme Court noted:
Oluvenile offenders who committed both homicide and nonhomicide crimes present a different situation for a sentencing judge than juvenile offenders who committed no homicide. It is difficult to say that a defendant who receives a life sentence on a non-homicide offense but who was at the same time convicted of homicide is not in some sense being punished in part for the homicide when the judge makes the sentencing determination.
Graham, 130 S.Ct. at 2023.