EMAS, J.
Torrence Lawton (“Lawton”) appeals the denial of his motion to correct illegal sentences pursuant to Rule 3.800(a), Florida Rules of Criminal Procedure. Lawton contends that the life-without-parole sentences imposed upon the nonhomicide offenses, committed while he was a juvenile, violate the authority established in Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). For the reasons that follow, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

BACKGROUND

The relevant facts are not in dispute. In 1987, at the age of sixteen, Lawton was charged in case number 87-9838 with first degree murder, attempted first degree murder and armed robbery (“the homicide/nonhomicide case”). That same year, Lawton was also charged in an unrelated case (case number 87-8000) with two counts of attempted murder (“the nonho-micide case”).[1]
A jury found Lawton guilty of all three charges in the homicide/nonhomicide case. Prior to sentencing in that case, Lawton pled guilty to the charges in the nonhomi-cide case. On February 9, 1988, the trial court entered sentences on both cases as follows:

The homicide/nonhomicide case (case number 87-9838)

First-Degree Murder (Count One): Life in prison without parole eligibility for twenty-five years;
Attempted First-Degree Murder with a Firearm (Count Two): Life in prison with a three-year mandatory minimum (for use of a firearm in the commission of the offense) to run consecutively with the sentence in Count One;
Armed Robbery (Count Three): Life in prison, to run concurrently with the sentence in Count Two but consecutively with the sentence in Count One.

The nonhomicide case (case number 87-8000)

Attempted FirsL-Degree Murder with a Firearm (Count One): Life in prison with a three-year mandatory minimum;
Attempted First-Degree Murder with a Firearm (Count Two): Life in prison with a three-year mandatory minimum, to run concurrent with the sentence in Count One.
The two sentences in the nonhomi-cide case were to run concurrent with each other and concurrent with the sentences imposed in the homicide/nonhomicide case. The judgments and sentences were all affirmed on direct appeal. See Lawton v. State, 538 So.2d 1369 (Fla. 3d DCA 1989). Lawton thereafter filed several postconviction motions; each was denied and affirmed on appeal. The instant appeal arises out of a motion for postconviction relief filed by Lawton following the United States Supreme Court’s decision in Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). Lawton contended that, pursuant to Graham, the life-without-parole sentences imposed on his nonhomicide offenses (i.e., attempted first-degree murder and armed robbery in case number 87-9838; two counts of attempted first-degree murder in case number 87-8000) were unconstitutional. The trial court denied Lawton’s motion for *827 post-conviction relief, finding the sentences were permitted under Graham because those sentences were imposed at the same time as the sentence for his homicide conviction. This appeal followed.
Lawton argues he has been unconstitutionally sentenced to life without parole for nonhomicide offenses committed when he was a juvenile. Lawton argues that because he is presently eligible for parole on his homicide offense, but will never be eligible for parole on his nonhomicide offenses, the nonhomicide sentences must be reversed and remanded in light of the holding in Graham.
The State asserts that Graham applies only where a juvenile is sentenced solely on nonhomicide offenses and that, because sentence was imposed on his homicide sentence at the same time sentence was imposed on the four nonhomicide sentences, Graham does not apply.
In other words, argues the State, because Lawton committed a homicide, it was permissible for the trial court to sentence him to life without parole on the nonhomicide crimes for which he was sentenced at the same time, whether or not the homicide and nonhomicide offenses were committed at the same time or arose out of the same criminal episode. The State also argues that the sentence of life with parole eligibility after twenty-five years (on the homicide) does not render the life-without-parole sentences (on the nonhomicides) constitutionally infirm under Graham.

The statutory scheme in 1987

At the time these crimes were committed (1987), first-degree murder was a capital felony. Any person convicted of first-degree murder and not sentenced to death “shall be punished by life imprisonment and shall be required to serve no less than 25 years before becoming eligible for parole. ...” § 775.082, Fla. Stat. (1987). Attempted first-degree murder with a firearm was a life felony (sections 777.04(4)(b), 775.087(l)(a), Fla. Stat. (1987)), punishable “by a term of imprisonment for life or by a term of imprisonment not exceeding 40 years.” § 775.082(3)(a), Fla. Stat. (1987). Armed robbery with a firearm was a first-degree felony punishable “by imprisonment for a term of years not exceeding life imprisonment.” §§ 775.082(3)(b), 812.13(2)(a), Fla. Stat. (1987).
Four years earlier, in 1983, the Florida Legislature established sentencing guidelines. See Ch. 83-87, § 2 at 306-08, Laws of Fla. By its terms, Chapter 947 of the Florida Statutes (providing for parole) did not apply to offenders sentenced pursuant to the guidelines. § 921.001(10), Fla. Stat. (1987). However, the sentencing guidelines also expressly provided that the guidelines did not apply to first-degree murder (and other “capital felonies”) committed after October 1, 1983. § 921.001(4)(a), Fla. Stat. (1987).
Thus, Florida law as it existed in 1987 provided only two possible sentences for first-degree murder: death or life without parole eligibility for twenty-five years. In the event that the State waived death as a possible penalty (as was done in this case)[2] the only remaining lawful sentence which could be imposed was life without parole eligibility for twenty-five years. Ironically, in 1987, the maximum sentence for attempted first-degree murder (or *828 armed robbery) was life without eligibility for parole.[3]

ANALYSIS

The nonhomicide case (case number 87-8000; two counts of attempted first-degree murder)

In Graham, the United States Supreme Court held that the Eighth Amendment to the United States Constitution prohibits the imposition of a life without parole sentence on a juvenile nonhomicide offender:
The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.
Graham, 130 S.Ct. at 2034.
As the holding above intimates, Graham carved out an exception for juveniles who commit both homicide and nonhomicide offenses. The State posits that, because Lawton committed a homicide in case number 87-9838, the life without parole sentences for the unrelated nonhomicide offenses in case number 87-8000 are lawful under Graham.[4]
Lawton contends that the exception carved out in Graham was limited to non-homicide offenses which are a part of the same criminal episode in which the homicide was committed. Because the nonho-micide offenses in case number 87-8000 are unrelated to the homicide offense in case number 87-9838, Lawton argues, the Graham exception does not apply to the life-without-parole sentences imposed for the two counts of attempted first-degree murder in 87-8000. We agree.
In explaining its rationale for establishing the rule laid down in Graham, the Supreme Court reviewed the various states’ legislative schemes regarding juvenile sentencing. The Court found that thirty-seven states permit sentences of life without parole for a juvenile nonhomicide offender in some circumstances. The Court then reviewed the actual sentencing practices among those states which authorized life-without-parole sentences for non-homicide offenses. The Court determined “an examination of actual sentencing practices in jurisdictions where the [life-without-parole] sentence in question is permitted by statute discloses a consensus against its use. Although these statutory schemes contain no explicit prohibition on sentences of life without parole for juvenile nonhomicide offenders, those sentences are most infrequent.” Id. at 2023. In Graham, the State contended that the study was inaccurate “because it [did] not count juvenile offenders who were convicted of both a homicide and a nonhomicide offense, even when the offender received a life without parole sentence for the nonho-micide.” Id. The Court explained its rationale for treating such cases differently:
Juvenile offenders who committed both homicide and nonhomicide crimes present a different situation for a sentencing judge than juvenile offenders who committed no homicide. It is difficult to say that a defendant who receives a life sentence on a nonhomicide offense but who was at the same time convicted of homi *829 cide is not in some sense being punished in part for the homicide when the judge makes the sentencing determination. The instant case concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense.

Id.

The State in the instant case argues that because Lawton was sentenced on the same day and at the same time for all offenses in both cases, he falls within the Graham exception because he was “at the same time convicted of homicide.” This is a strained reading of Graham. In context, Graham clearly intended the exception to apply where the juvenile is convicted of committing both a homicide and nonhomi-cide in the course of the same criminal episode. Graham surely did not envision the situation in which, by happenstance, convenience, case management, or otherwise, a juvenile defendant consolidates two unrelated cases for sentencing purposes and thereby subjects himself to being sentenced to life without parole on a nonhomi-cide offense simply because he is also being sentenced, on the same day, on an unrelated homicide offense. Accepting the State’s argument would mean a very different result for Lawton if he had simply scheduled his sentencing hearing on the nonhomicide case one day before his sentencing hearing on the homicide case.
We hold that the life-without-parole sentences imposed for the two counts of attempted first-degree murder in the nonho-micide case (case number 87-8000) violate Graham and Lawton is entitled to a new sentencing hearing on those counts.

The homicidelnonhomicide case (case number 87-9838; first-degree murder, attempted first-degree murder and armed robbery)

The analysis is quite different with regard to the homicide/nonhomicide case, because Lawton was convicted of both homicide and nonhomicide offenses which arose out of a single criminal episode. On its face, therefore, the sentences of life without parole on the two nonhomicide offenses appear to fall squarely within the exception created in Graham, permitting the imposition of such a sentence for a juvenile who “committed both homicide and nonhomicide crimes_” Id. at 2023. In fact, the record reveals that the trial court, in sentencing Lawton to life without parole for the attempted murder and the armed robbery, departed upward from the sentencing guidelines, and properly considered the unscored homicide as an aggravating factor justifying the departure sentence on the two nonhomicide offenses. See Lawton v. State, 538 So.2d 1369 (Fla. 3d DCA 1989); McPhaul v. State, 496 So.2d 1009 (Fla. 2d DCA 1986) (affirming departure sentence of 99 years for armed robbery based upon unscored conviction for first-degree murder). The sentence exemplifies the very rationale relied upon by the Supreme Court in Graham in differentiating between juvenile offenders who commit only a nonhomicide offense and those who commit both a homicide and nonhomicide offense. As the Supreme Court made clear, it is “difficult to say that a defendant who receives a life sentence on a nonhomicide offense but who was at the same time convicted of homicide is not in some sense being punished in part for the homicide when the judge makes the sentencing determination.” Id. at 2023.
The defense contends, however, that the life-without-parole sentences on the two nonhomicides are nevertheless unconstitutional because those sentences (life without parole) exceeded the sentence imposed for the homicide (life with parole eligibility after twenty-five years). This, Lawton contends, is a grossly disproportionate sentence, because he is now eligible for *830 parole consideration on his homicide but is not parole eligible on the two nonhomicide offenses.
However, nothing in Graham requires that the sentence on the homicide equal or exceed the sentence on the nonhomicide offense in order for the sentences to be lawful.[5] More importantly, however, under the statutory scheme that existed at the time of the instant case, the trial judge imposed the maximum sentence authorized for first-degree murder. In fact, the trial court had no discretion whatsoever; given that the death penalty had been waived by the State, the trial court was required by law to impose a sentence of life without parole eligibility for twenty-five years. See § 775.082(1), Fla. Stat. (1987). In 1987, a sentence of life without parole for the homicide would have been illegal. The trial court did not and could not exercise any discretion in imposing this sentence. It seems plain, given the upward departure sentences of life-without-parole on the two nonhomicide offenses, that the trial court would have imposed life without parole on the homicide count, had such a sentence been authorized under the law.[6]
Moreover, Lawton’s argument that the sentences are disproportionate is predicated not upon the decision in Graham, but upon a sentencing scheme that existed in 1987, which provided a non-discretionary sentence for first-degree murder (life without parole eligibility for twenty-five years) that was less severe[7] than the discretionary maximum sentence for attempted first-degree murder (life without parole). Any such claim of disproportionality should have been raised on direct appeal or, at the latest, in a motion filed under Rule 3.850 within two years of his conviction and sentence becoming final. His proportionality claim as to the sentences imposed in case number 87-9838 are time-barred.
We affirm the trial court’s order denying relief as to case number 87-9838. We reverse the trial court’s order denying relief as to the two counts of attempted first-degree murder in case number 87-8000 and remand for a new sentencing *831 hearing and for proceedings consistent with this opinion.

. Lawton was also charged with, and pled guilty to, possession of a firearm while engaged in a criminal offense. However, the sentence in that case is neither the subject of this appeal nor relevant to our discussion and analysis.

. Of course, even if the State had not waived the death penalty in this case, subsequent decisions have established that Lawton, a juvenile at the time of the homicide, was not eligible for the death penalty. See Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).

. In 1994, the Florida Legislature amended section 775.082(1) to eliminate parole eligibility for first-degree murder. See Ch. 94-228, § 1 at 1577, Laws of Fla. Since that time, the only two possible penalties for first-degree murder are death or life without parole.

. Although the nonhomicide case has the lower case number, the offenses in case number 87-8000 were committed after the homicide (and nonhomicide) offenses were committed in case number 87-9838.

. Cf. Akins v. State, 104 So.3d 1173 (Fla. 1st DCA 2012) (reversing nonhomicide sentence of life without parole where trial court exercised its discretion in imposing a sentence of twenty-seven years on the related homicide offense of second-degree murder, an offense punishable by a maximum of life in prison). We find the Akins case distinguishable from this case because here, the defendant received two life sentences.

. This statutory anomaly — and the resulting fact that life without parole eligibility for twenty-five years represented the only sentence the court could impose for the homicide — distinguishes the instant case from Akins v. State, 104 So.3d 1173 (Fla. 1st DCA 2012), and Washington v. State, 110 So.3d 1 (Fla. 2d DCA 2012).

. Although the mandatory sentence for first-degree murder was less severe than the maximum sentence for attempted first-degree murder, one could reasonably argue that the mandatory, non-discretionary nature of the sentence for first-degree murder renders it "more” severe, as the maximum sentence is also the minimum sentence, and the trial judge is prohibited from considering mitigating circumstances of the crime or the defendant, and thus prohibited from making an individualized sentencing decision in fashioning the appropriate sentence. By contrast, the trial judge had the discretion to consider such circumstances in fashioning the appropriate sentence for the nonhomicide offenses (attempted first-degree murder and armed robbery). In case number 87-9838, for example, the sentencing guideline range for Lawton’s two non-homicide charges was seventeen to twenty-two years. Although the trial court ultimately departed upward from that range, the court had the discretion to impose a guidelines sentence well below the maximum permissible sentence of life without parole.