DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**JANARD ORANGE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D11-2280

[September 3, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. 09-8042 CF10B.

Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melvin G. Mosier, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Janard Orange was convicted of first degree murder, as well as four counts of robbery with a firearm and one count of assault. Appellant was 16 years old at the time of the murder of Gregory Smith ("the victim"), also 16. The victim was killed as he was waiting to be picked up following his attendance at a school social function. Appellant was sentenced to life without parole for the murder, and was also given life sentences with a mandatory minimum prison term of ten years for each of the robbery convictions.[1]

We find no error with respect to Appellant's convictions. However, in light of recent United States and Florida Supreme Court decisions

_____

[1] Appellant was charged with aggravated assault with a firearm and convicted of the lesser-included offense of assault. His sentence on this charge was time served, and that sentence has not been appealed. His sentences on the other five convictions are to run concurrently.

concerning the sentencing of juveniles, we reverse Appellant's sentence for the homicide count and remand this case for resentencing. We affirm the sentencing for the armed burglary counts, while acknowledging that conflicts between Florida's District Courts of Appeal with respect to juvenile sentencing have recently been accepted for review by the Florida Supreme Court.

## Background

In April 2009, a social function was held at Boyd Anderson High School. After the function ended, six students were outside at the back of the school waiting to be picked up. While they were waiting, a car drove past them, made a U-turn, and drove back to where the students were. One student started running away when she saw that the car was coming back towards them because she was afraid. The car stopped in front of the students. Three young men got out of the car wearing black t-shirts and masks and holding guns. The young men proceeded to take the cell phones, jewelry, and money of the students. The victim gave up his cell phone and pleaded for the young men to not take his life. He was nonetheless shot in the chest by one of the masked individuals, later identified as Appellant by the other young men in the car. Appellant and the other young men returned to the car and fled when the car's driver alerted them that a car was coming. The victim died at the scene of the shooting.

Appellant's conviction was based on the testimony of the robbery and assault victims and, primarily, that of the other young men in the car that evening and the girlfriend of Appellant's co-defendant. The co-defendant testified that, when he asked Appellant why he shot the victim, Appellant replied that he "did not like [him]." One of the other young men who was in the car (and denied leaving the car to participate in the robbery), testified that, as the car passed by the students standing outside of the school, Appellant declared "that's that n----er from Parkway I don't like, pull the car over." This witness further testified that, once the car stopped in front of the students, Appellant jumped out of the car and "started busting shots." He then grabbed the victim. After the victim begged for his life, the witness recalls Appellant responding "f--k that" and shooting the victim. When he and the others asked Appellant why he shot the victim, Appellant replied "I don't like that n----er, he's from Parkway, f--k him."

The co-defendant pled guilty to second degree murder and four counts of robbery. Appellant went to trial before a jury and was convicted of first degree murder, four counts of robbery with a firearm, and assault. He

2

appeals the conviction, claiming trial court error in allowing the testimony of a former middle school counselor whose testimony established that Appellant knew the victim and had a prior "confrontation" with him. Appellant also challenges his sentences for the murder and the four robbery with a firearm convictions.

## I.	There was no reversible error with respect to Appellant's convictions.

Appellant's sole challenge to the convictions (as distinct from his challenges to the sentences) pertains to the State's introduction of the testimony of a behavioral support counselor at the middle school that both Appellant and the victim had attended. The State initially sought to introduce this testimony to demonstrate that Appellant and the victim knew each other prior to the night of the murder and that the victim was possibly afraid of Appellant. The State noted "[t]his is not a drive-by, this is not a stranger, that's the purpose of [the counselor's] testimony."

### A. Appellant's challenge to the initial direct examination does not merit reversal.

Although the objections to the counselor's testimony began during the State's opening statements, the challenges at issue occurred after the counselor was sworn in to testify. Appellant argued that anything the counselor would testify to concerning what the victim told him would be inadmissible hearsay. The State replied that it was more of an issue of relevancy and that the court would have to determine whether a pre-existing relationship between the parties, established through testimony of events from over a year ago, was relevant. The court decided to hear the counselor's testimony outside the presence of the jury so as to make an informed decision.

After the jury was excused from the courtroom, the State began to set forth the testimony it sought to elicit from the counselor. The counselor stated that he knew both the victim and Appellant from being a behavioral specialist at their middle school. The counselor was working with the victim on problems he was having, including one with a female student. The female student wanted to get Appellant to fight the victim but the victim did not want to fight Appellant because Appellant was known as a "tough guy in the community." The counselor approached Appellant to ask him if he wanted to fight the victim, but Appellant chuckled and said he did not want to mess with that "little boy." Nothing further was mentioned by the victim to the counselor about Appellant. At the end of

the school year, the victim approached the counselor and said that "stuff was starting up again," but he did not say Appellant was involved.

Outside the presence of the jury and the counselor, the trial court allowed argument from the parties as to whether the testimony was relevant. The State maintained that all it wanted to elicit from the counselor was that he knew the victim because he worked at his school, that the victim came to meet with the counselor about a problem, this led to the counselor approaching Appellant at school and speaking to him about the victim, and that the victim again approached the counselor at the end of the year. The State specifically stated that it was "not going to elicit any conversations from anybody else," just what the counselor did. Appellant objected based on relevance and hearsay. The trial court overruled the objections in part and clarified to the counselor that anything the victim said to him was not to be discussed in front of the jury.

The counselor was then allowed to testify in front of the jury. During the initial direct examination, the counselor stated that he was a behavioral specialist at the middle school that Appellant and the victim attended and that the victim had come to him with a concern about a year before the shooting. Without saying what the concern was, the counselor explained that he and the victim then went to the cafeteria so the victim could identify the student he had a problem with. The counselor stated that the other student was Appellant and so he approached Appellant and resolved the matter. The counselor did not say what was said between him and the victim or him and Appellant.

On appeal, Appellant challenges the admission of the initial testimony of the school counselor as irrelevant and as more prejudicial than probative. We review a trial court's evidentiary rulings for abuse of discretion, which discretion is limited by the rules of evidence. *McDuffie v. State*, 970 So. 2d 312, 326 (Fla. 2007). "Overall, broad discretion rests with the trial court in matters relating to the admissibility of relevant evidence, and that ruling will not be overturned absent a clear abuse of discretion." *Lavallee v. State*, 958 So. 2d 509, 510 (Fla. 4th DCA 2007) (quoting *Grau v. Branham*, 761 So. 2d 375, 378 (Fla. 4th DCA 2000)).

Relevant evidence is defined as "evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2011). Relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." §§ 90.402-.403, Fla. Stat. (2011).

4

We find that the trial court did not abuse its discretion in concluding that the counselor's testimony, which established that Appellant and the victim knew each other before the shooting, was relevant. As the State was arguing alternative theories of premeditated first degree murder and felony murder, the testimony went towards proving the premeditation element of the offense. Establishing that Appellant knew the victim tended to prove that the shooting was not random or merely connected to the robbery. Furthermore, even though the counselor testified to acts that occurred over a year before the shooting, the evidence was not too far removed since it was offered to show only that Appellant and the victim knew each other. *Contra Nshaka v. State*, 92 So. 3d 843, 847-48 (Fla. 4th DCA 2012) (finding evidence inadmissible because it was too far removed and irrelevant to the crime charged).

Because the State initially questioned the counselor only to establish a connection between Appellant and the victim, without further details regarding the circumstances of the encounter or insinuating any negative feelings towards Appellant, the testimony was not unfairly prejudicial, confusing, or misleading to the jury so as to make it inadmissible, even though relevant. *See* §§ 90.402-.403, Fla. Stat. (2011). Contrary to Appellant's contention that the testimony was highly prejudicial, citing *Green v. State*, 27 So. 3d 731 (Fla. 2d DCA 2010) and *Zerbe v. State*, 944 So. 2d 1189 (Fla. 4th DCA 2006), the counselor's testimony was severely restricted and did not present Appellant in a negative light. The State elicited from the counselor that he saw students for a variety of reasons, even if a student just wanted to talk.

In regard to the relationship between the victim and Appellant, the testimony revealed that the victim came to the counselor with a concern and that, because of that concern, the victim walked with the counselor to the cafeteria to point out "the other student that he had a problem with." Although the words "concern" and "problem" were used, these cannot be said to be highly prejudicial to Appellant where these are normal words that would be used with a counselor in his capacity of helping students work through any type of issue. The testimony concluded with the counselor explaining that he spoke with Appellant about the concern/problem and, after that, the counselor had no need to speak to Appellant about the issue again, leading to the conclusion that everything was resolved between the parties and leaving no indication with the jury that hostility existed between them.

The testimony, as presented in front of the jury, did not support an improper implication regarding Appellant's probability of committing the

5

crime, as was the case in *Green*, 27 So. 3d at 737-38, and *Zerbe*, 944 So. 2d at 1194. When looking at the entirety of this initial direct examination, the testimony was first relevant and also not unfairly prejudicial to Appellant so as to render it inadmissible.

Additionally, this testimony cannot be said to be a "needless presentation of cumulative evidence" where only one prior witness had testified that Appellant said he knew the victim. *See* §§ 90.402-.403, Fla. Stat. (2011). The prior witness was one of the boys in the car with Appellant at the time of the incident and the jury could have found him not credible because of his involvement. As such, there was no abuse of discretion with the trial court allowing the initial limited direct examination of the counselor by the State.

### B. Appellant's challenge to reopened direct examination does not merit reversal.

After the direct examination concluded, defense counsel explained that he wanted to elicit from the counselor that the problems the victim was having were with various female students and one of the female students wanted to get Appellant to fight the victim but Appellant never approached the victim. The trial court commented that it seemed that now the defense was trying to "open the door" as to certain testimony that it was previously trying to keep out. Seeking to clarify, the court inquired:

> **Court:** So, it's my understanding, then, you have no objection to him now getting into, if I reopen his direct, what we said outside the presence of the jury.
>
> **Defense Counsel:** I can't object to it, Judge.
>
> **Court:** Well, why did we have that hearing then?
>
> **Defense Counsel:** Because if you would have granted my motion, this testimony would not have come in.
>
> **Court:** In other words, you're saying if part of it comes in, all of it comes in?
>
> **Defense Counsel:** I think, absolutely, Judge, that this part should come in to explain the situation.

* * *

6

**Court:** You're not waiving any objection to relevance, but you're saying now that, based on the fact that this came in, which is non-hearsay, you are now saying that, Judge, because of, from your perspective, a misimpression left on the jury, you want to get that clarified through hearsay; is that correct.

**Defense Counsel:** Exactly. It would not be fair otherwise.

After each party questioned the witness outside the presence of the jury, more discussion between the attorneys, and finally the court itself inquiring of the witness, the court ruled:

My ruling is, is that I am going to grant your motion to cross-examine him of the statements regarding the fear and the concern and the relationship with [Appellant], the girlfriend, and the deceased, the victim. I am going to rule that you're not to get into any area of [the victim] and his scholarship, the way he acted as a student, whether he was smart, whether he had a behavioral problem or otherwise, that is inappropriate and it is not relevant to what we're doing here. I agree with you, [Defense Counsel], to some extent [the State] is creating this impression, this innuendo, of the relationship between [Appellant] and the fear of [the victim], and I think that needs to be, since that door was opened, needs to be developed before the jury, and I'm ruling that it's admissible under those circumstances. But what's good for the goose is good for the gander. I'm going to let [the State] reopen his direct to let him get into that first before you cross-examine him.

. . . [The witness] may testify that [the victim] himself was afraid, but he cannot get into the fact that it's known that he's a thug or something along those lines. That is my ruling, notwithstanding your argument of reputation evidence or otherwise.

No objection was made to this compromise between the parties' objections. Before the jury reentered the courtroom, the State asked the court whether it had permission to go into statements about the victim's fear of Appellant. The court responded that it did, and then the court asked defense counsel if anything needed to be clarified. Defense counsel replied, "No."

The jury then reentered the courtroom and the State reopened its direct examination of the counselor. The State elicited that the victim approached the counselor because a female student told him that Appellant wanted to fight him. The counselor stated that the victim knew Appellant to be a really tough guy; and, even though he told the counselor that he was not afraid, the counselor knew that he was afraid. This was the first time that the victim asked the counselor to handle a situation for him. The counselor approached Appellant about the victim but Appellant kind of laughed it off as if it was not a big deal.

On cross-examination, defense counsel sought the same testimony that contact between the counselor and the victim was initiated by the victim, who had been told that Appellant wanted to fight him. The defense also elicited from the counselor that, after the counselor approached Appellant, Appellant laughed it off and said something like, "I'm not going to do anything to that little boy." The counselor agreed that Appellant did not seem angry at the time and he did not have any problems with the victim. Appellant was not mentioned again in discussions between the counselor and the victim.

On appeal, Appellant now challenges portions of the State's reopened direct examination after the lengthy side bar conference and discussion outside the presence of the jury as to the scope of Appellant's cross-examination of the counselor. Appellant is claiming the trial court erred in allowing such testimony, alleging the testimony was inadmissible hearsay evidence of the victim's state of mind. However, at the trial, Appellant objected only to the State's asking the witness whether it was uncommon for a male to "have some bravado about what they are or are not afraid of." Appellant's counsel challenged this questioning, stating, "Objection, your Honor, as to what's common or uncommon." There was no hearsay objection, and thus the issue that Appellant attempts to address on appeal was not properly preserved for appellate review. *See Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985) ("In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the *specific* legal argument or ground to be argued on appeal or review *must* be part of that presentation if it is to be considered preserved.") (emphasis added).

Furthermore, Appellant abandoned any hearsay challenge to the counselor's testimony when it specifically and expressly requested the court to allow such testimony and agreed with the court that the State would be allowed to get into the details of the situation with the counselor. *See Courtemanche v. State*, 24 So. 3d 770, 773 (Fla. 5th DCA 2009) (recognizing that an objection may be abandoned during the course of a

8

side-bar conference); *Garcia-Gallo v. State*, 624 So. 2d 851, 852 (Fla. 3d DCA 1993) (refusing to address the merits of certain points on appeal where they were abandoned or "expressly acquiesced to by the defendant"); *Castillo v. State*, 412 So. 2d 36, 37 (Fla. 3d DCA 1982) (finding that timely objections may be considered abandoned when defense counsel explores the challenged subject and brings out the alleged prejudicial details). Counsel may choose to abandon an objection for reasons of strategy. *See, e.g., Floyd v. State*, 18 So. 3d 432, 449 (Fla. 2009) ("[C]ounsel eventually abandoned these objections in an attempt to place the murder in a domestic-dispute context as a means to avoid the death sentence."); *Pomeranz v. State*, 703 So. 2d 465, 470 (Fla. 1997) ("[W]e find that [the defendant] abandoned his previous objections to admission of this evidence when he chose to pursue a strategy of repeatedly informing the jury of the dozens of other robberies and burglaries he had committed.").

If Appellant had an issue with the lack of context or details presented by the State's initial direct examination regarding the situation between the victim, the counselor, and Appellant, he had to make a strategic decision on how to handle it. Appellant chose to abandon its objection to the hearsay testimony so that more details would be revealed about why the victim approached the counselor and why the counselor then approached Appellant. "A criminal defendant may not take advantage on appeal of an error which he himself induced at trial." *Castle v. State*, 305 So. 2d 794, 797 (Fla. 4th DCA 1974); *see also Ellison v. State*, 349 So. 2d 731, 732 (Fla. 3d DCA 1977). Appellant chose to allow the hearsay testimony to be included, knowing and understanding that this would open the door for the State to inquire into the circumstances as well. The trial court repeatedly cautioned defense counsel and repeatedly attempted to clarify what defense counsel was asking the court to allow. Counsel acquiesced to testimony being presented about the victim's fear without objection and then did not object when the testimony was elicited in front of the jury. Whereas the State originally limited its direct examination to only relevant non-hearsay testimony, the later reopened direct examination questions and responses were induced by Appellant's request to allow the full circumstances of the interaction with the counselor to be admitted. Therefore, Appellant cannot now, on appeal, take advantage of any error from the court allowing the testimony. *See Castle*, 305 So. 2d at 797.

II.   **The trial court's sentencing Appellant, a minor at the time of the murder, to life in prison for first degree murder and robbery with a firearm must be reversed in part and affirmed in part.**

Appellant argues that the trial court reversibly erred in sentencing him to a mandatory term of life in prison without the possibility of parole for the first degree murder conviction because he was only sixteen years old at the time of the shooting, and recent United States Supreme Court decisions have found that such sentences for minors, when mandatory, violate the Eighth Amendment. Appellant's second sentencing challenge is that the trial court reversibly erred in sentencing him to life in prison without parole for the four robbery with a firearm convictions.

## A. *Miller* dictates a remand of the first degree murder conviction for resentencing.

In *Miller v. Alabama*, 132 S. Ct. 2455, 2475 (2012), the United States Supreme Court held that *mandatory* life sentences for juveniles under the age of eighteen at the time the offense is committed violates the Eighth Amendment of the United States Constitution. The Court explained its rationale in light of its other decisions on juvenile sentencing in *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that imposition of the death penalty on juveniles violates the Eighth Amendment), and *Graham v. Florida*, 560 U.S. 48 (2010) (holding that the Eighth Amendment prohibits imposition of a life without parole sentence on a juvenile convicted of a nonhomicide offense):

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures have affected him.

*Miller*, 132 S. Ct. at 2468. However, "*Miller* did not categorically preclude sentencing a juvenile to life without possibility of parole." *Mason v. State*, 134 So. 3d 499, 500 (Fla. 4th DCA 2014). A sentence of life without parole cannot be *mandatorily* imposed on a juvenile, and the sentencing court must first "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" before imposing the "law's harshest term of imprisonment" for a juvenile. *Miller*, 132 S. Ct. at 2458, 2469, 2475.

The State does not contest that Appellant's sentence for first degree murder violates the Supreme Court's decision in *Miller*; however, the primary disagreement between the parties is the proper remedy upon reversing the sentence. Appellant is requesting this court to reverse and remand for resentencing, whereas the State's answer brief focuses on the concept of statutory revival, which would impose a sentence of life in prison with the possibility of parole after twenty-five years.

Two of our sister courts have accepted the State's position. *See Horsley v. State*, 121 So. 3d 1130 (Fla. 5th DCA 2013), *review granted*, No. SC13-1938, 2013 WL 6224657 (Fla. Nov. 14, 2013); *Rodriguez-Giudicelli v. State*, 39 Fla. L. Weekly D1089 (Fla. 2d DCA May 23, 2014). However, this court has consistently followed *Miller* to direct a trial court, on remand, "to conduct further sentencing proceedings and expressly consider whether any of the numerous 'distinctive attributes of youth' referenced in *Miller* apply in this case so as to diminish the 'penological justifications' for imposing a life-without-parole sentence upon appellant." *Daugherty v. State,* 96 So. 3d 1076, 1080 (Fla. 4th DCA 2012); *see also Mackey v. State*, No. 4D12-1573, —— So. 3d ——, 39 Fla. L. Weekly D1526, 2014 WL 3605552 (Fla. 4th DCA July 23, 2014); *Dawson v. State*, No. 4D13-871, –— So. 3d ——, 39 Fla. L. Weekly 1468, 2014 WL 3435038 (Fla. 4th DCA July 16, 2014); *Juarez v. State,* 138 So. 3d 1094 (Fla. 4th DCA 2014); *Brighton v. State,* 141 So. 3d 579 (Fla. 4th DCA 2014). Accordingly, we reverse Appellant's sentence of life imprisonment without the possibility of parole for first degree murder, and remand for resentencing proceedings in conformity with *Miller*, providing the trial court with the opportunity to consider Appellant's individual circumstances and characteristics as a juvenile and the opportunity to again impose a sentence of life without parole after considering the proper facts. We note that the Florida Supreme Court has accepted jurisdiction to resolve the conflict between the Districts in *Horsley*, 2013 WL 6224657.

### B. Resentencing is not necessary for Appellant's Convictions for Robbery with a Firearm.

Appellant also requests this court to reverse and remand for resentencing on his four convictions for robbery with a firearm. In Florida, armed robbery is a first degree felony "punishable by imprisonment for a term of years not exceeding life imprisonment." § 812.13 (2)(a), Fla. Stat. (2011). If a defendant possesses a firearm during the commission of the robbery, a mandatory minimum of ten years in prison must be imposed. *See* § 775.087(2)(a)(1)c., Fla. Stat. (2011). In the instant case, the trial court's sentencing Appellant to life imprisonment for each robbery with a firearm conviction far exceeded the mandatory minimum and raises an

issue only partially addressed by the United States Supreme Court, and currently pending before the Florida Supreme Court: whether a juvenile can be given a sentence of life in prison without parole for nonhomicide crimes that took place in conjunction with a homicide(s).

In *Graham*, the Supreme Court created a categorical rule prohibiting sentences of life without the possibility of parole for juveniles who did not commit a homicide offense. *Graham*, 560 U.S. at 74-75. However, Florida district courts disagree as to whether this categorical rule applies in situations where a juvenile defendant commits a nonhomicide offense along with a homicide offense in the same criminal episode.

The First and Fifth Districts maintain that the Supreme Court created a bright line rule concerning life without parole sentences for juveniles convicted of nonhomicide offenses; thus, even if the same juvenile also commits a homicide offense during the same criminal incident, the trial court may not sentence the juvenile to life without parole for the nonhomicide offense. *See Jackson v. State*, 38 Fla. L. Weekly 1334 (Fla. 1st DCA 2013); *Johnson v. State*, 38 Fla. L. Weekly D953 (Fla. 1st DCA 2013); *Weiand v. State*, 129 So. 3d 434 (Fla. 5th DCA 2013); *Atkins v. State*, 104 So. 3d 1173 (Fla. 1st DCA 2012). These districts hold to the bright line rule that the imposition of a life without parole sentence for a juvenile convicted of any nonhomicide crime is illegal and mandates reversal. *See, e.g., Johnson*, 38 Fla. L. Weekly D953.

In *Johnson,* the First District certified conflict with the Third District's decision in *Lawton v. State*, 109 So. 3d 825 (Fla. 3d DCA 2013), *review granted*, No. SC13-685, 2014 WL 305688 (Fla. Jan. 14, 2014). *Lawton* construed a portion of the *Graham* decision as supporting the creation of an exception to the Supreme Court's rule that would allow the imposition of a life without parole sentence on a juvenile for a nonhomicide offense when a homicide offense also occurred in a single criminal episode. *Lawton*, 109 So. 3d at 828. Although the First and Fifth Districts maintain that the language is merely dicta, the Second and Third districts find the language creates a clear exception. *Id.*; *Starks v. State*, 128 So. 3d 91, 92 (Fla. 2d DCA 2013); *Washington v. State*, 110 So. 3d 1, 2-3 (Fla. 2d DCA 2012).

In *Graham,* the Supreme Court recognized that "[j]uvenile offenders who commit[] both homicide and nonhomicide crimes present a different situation for a sentencing judge than juvenile offenders who commit[] no homicide." *Graham,* 560 U.S. at 63. The Court further explained:

12

It is difficult to say that a defendant who receives a life sentence on a nonhomicide offense but who was at the same time convicted of homicide is not in some sense being punished in part for the homicide when the judge makes the sentencing determination. The instant case concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense.

*Id.* Because of this language, the Second and Third Districts contend that a life without parole sentence for a juvenile convicted of a nonhomicide offense is not illegal and may be upheld where the juvenile was convicted of a homicide offense in the same incident. *See, e.g., Starks,* 128 So. 3d at 92. However, the Second District in *Washington,* although maintaining that the sentences were not illegal, still reversed a defendant's sentences of life without parole for two nonhomicide convictions where the court was also reversing the defendant's sentences of life without parole for two homicide convictions because the court concluded that the constitutionality of the sentences imposed for the nonhomicide convictions "probably hinges on whether the trial court, on remand, imposes life without parole for [the homicide convictions]." *Washington,* 110 So. 3d at 3.

This District has not issued an opinion regarding the application of *Graham* to the instant situation where a juvenile defendant received sentences of life without parole for four nonhomicide offenses for acts that occurred during the same criminal episode for which the defendant was also convicted of a homicide offense. We find the *Lawton* rationale to be more compelling, permitting the trial court to "properly consider[] the . . . homicide as an aggravating factor justifying" the maximum sentence for the nonhomicide charges. *Lawton,* 109 So. 3d at 829. Accordingly, we find that the life sentences for the four counts of burglary with a firearm were not illegal and we do not disturb the trial court's sentencing with respect to those counts.

Similar to the upcoming resolution of the conflict between Districts with respect to juvenile sentencing of homicides post-*Miller,* the Florida Supreme Court has also accepted jurisdiction to address the conflict with respect to juvenile sentencing for nonhomicide offenses that are connected to homicides in the same criminal enterprise. *Lawton v. State,* No. SC13-685, 2014 WL 305688 (Fla. Jan. 14, 2014).

## Conclusion

We affirm the trial court's denial of Appellant's motion for judgment of

13

acquittal and uphold his convictions for first degree murder and four counts of robbery with a firearm. We reverse Appellant's mandatory life without parole sentence for the homicide and remand for the trial court to conduct further sentencing proceedings. Finally, we affirm the sentences with respect to the four armed burglary convictions.

*Affirmed in part, reversed in part, and remanded.*

STEVENSON and CONNER, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**