DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOHNTAVIUS GOODEN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-323

[March 13, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Samantha Schosberg Feuer, Judge; L.T. Case No. 50-2016-CF-007882-AXXX-WB.

Carey Haughwout, Public Defender, and Logan T. Mohs, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Jonathan P. Picard, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant challenges his conviction for the charge of felon in possession of a firearm. He raises multiple issues. We address only one which requires reversal. During closing argument, the prosecutor made improper comments, shifting the burden of proof and arguing facts not in evidence. The court erred in overruling the defense counsel's objections to these arguments. Because we cannot conclude that they were harmless beyond a reasonable doubt, we reverse.

Evidence at trial showed that two Palm Beach County deputies were called to assist in an investigation of a crime at a local park in Belle Glade. (The crime was a homicide, but through a motion in limine, the State agreed that this fact would not be mentioned at appellant's trial, as he was not implicated in that crime). When the officers arrived at the scene, they exited their vehicle dressed in tactical gear and told the group of people in the area that they were not free to leave. Almost immediately, a man, who one of the deputies identified as appellant, began to run away. That deputy chased after appellant on foot and never lost sight of him. Another

officer, a homicide detective, saw the two deputies approach the appellant, and the detective paralleled the chase by vehicle. The deputy and detective testified that they found appellant lying on his belly on the ground behind a sedan, and his hand was behind the car's rear tire on the driver's side. One officer handcuffed him and found a firearm under the sedan right where they had observed appellant's hand.

The detective testified consistent with the deputy who chased appellant on foot, but he added additional details. He took the lead in the chase, never losing sight of the appellant. He observed him attempting to hold something in his waistband, which the officer was concerned might be a gun. He also saw appellant with a gun in his hand, which he placed underneath the sedan. On cross-examination, the detective was impeached with his deposition, in which he testified that he had lost sight of appellant for a brief time. The detective also revealed that the appellant had been interviewed at the police station after his arrest.

A forensic scientist with the firearms unit of the Palm Beach County Sheriff's Office testified that he received the firearm for testing. He tested the firearm for latent fingerprints and swabbed for DNA. He did not find any fingerprints. The DNA swabs were not tested, although a detective could request testing. The scientist test-fired the gun, finding that it was functional. After this testimony, the State rested its case. The defense moved for a judgment of acquittal, which was denied.

Appellant testified in his defense. He admitted that he was convicted of a felony on four occasions. He also admitted that he ran from the officers, but he thought that they had a warrant for his arrest for unpaid child support. He was wearing jeans, but no belt, and he was holding his pants. He was carrying his phone in his hand. He did not have a gun. When he ran towards the house where the car was parked, he turned a corner that was sloped, and he lost his footing and fell directly behind the car. The only thing in his hand was his phone. He did not notice the gun under the car because he was focused on the officer, who was pointing a gun at him. The defense then rested its case.

During closing argument, the prosecutor commented on appellant's testimony and argued:

> [PROSECUTOR]: He told you that when he was running, he was holding his waistband, just like the officer said. The officer said that he believed it was because [appellant was] trying to prevent a firearm from falling out of his waistband. Now, the Defendant said well, that's not true because I was

2

wearing jeans and I didn't have a belt. More importantly, the officer was never asked about that. And think about that. Wouldn't it be very important to ask the officer, listen, you just testified that you think the firearm was in his waistband. Didn't you also notice he wasn't wearing a belt? Couldn't that be a completely reasonable basis --

[DEFENSE COUNSEL]: Objection, shifting of burden.

THE COURT: Overruled.

[PROSECUTOR]: Couldn't that be an explanatory reason for why he is holding on to his waistband? No, they didn't ask him about that. He also said he had a cell phone in his hand. They didn't ask the officer, didn't you also notice he had a black cell phone in his hand? They didn't ask him those details. They only [inaudible] from the Defendant. It's because they are not factually true.

After the State finished, defense counsel began her argument by noting for the jury the absence of DNA evidence:

[DEFENSE COUNSEL]: Thank you, Your Honor. Four hundred and eighty-seven days, ladies and gentlemen. Four hundred and eighty-seven days between when that gun was swabbed for DNA and today. Four hundred and eighty-seven days between August 8, 2016 and today. Four hundred and eighty-seven days that critical evidence sat in an evidence locker at the Palm Beach County Sheriff's Office. Four hundred and eighty-seven days that the only unbiased evidence in this case sat in an evidence locker collecting dust.

To respond to the State's argument that the defense didn't cross-examine the officers with respect to the appellant's attire, the defense argued to the jury:

We also have from [the deputy], or [the detective], that you should convict Mr. Gooden because he was holding up his waistband when he was running. And apparently it's my duty to present to you that Mr. Gooden didn't have a belt that day. Well, it's not because the Judge explicitly told you that it's not my duty to present evidence. The State could have recalled those officers and asked them was Mr. Gooden wearing a belt,

3

but they didn't want to do that because that would corroborate Mr. Gooden's story.

Defense counsel also argued that the State's case had many holes in it and that there was a lack of competent evidence to support the State's case. She repeatedly argued the lack of DNA evidence, even though swabs were taken from the gun.

On rebuttal, the prosecutor told the jury, over the defense objection, that

> [PROSECUTOR]: The defense attorney indicated, and spent a lot of time talking about the DNA in this case. Members of the Jury, the Palm Beach County Sheriff's Office is a large agency, it's a large organization, but they can't do everything. Like all agencies, they have funding and they have to prioritize certain cases. And when they prioritize cases, that takes into account every type of case here in Palm Beach County. The murder cases --
>
> [DEFENSE COUNSEL]: Objection, facts not in evidence.
>
> THE COURT: Overruled. It's argument. Go ahead.
>
> [PROSECUTOR]: The murder cases, sexual battery cases and the like. When they are making determinations as to what cases are going to be going front of the line on an expedited basis for purposes of DNA analysis. Unfortunately, the DNA analysis in this case was not conducted. The State is not hiding anything from you. There is no secret report. It doesn't exist because it didn't happen.

Following closings, the jury began deliberating. The jury eventually indicated that it could not come to a unanimous decision, and the court gave an *Allen*[1] instruction over appellant's objection. The jury later requested to re-hear the testimony of the two law enforcement officers, and the court allowed the playback.

The jury found appellant guilty of being a felon in possession of a firearm, finding that he actually possessed the weapon. The court entered a conviction and sentence, prompting this appeal.

---

[1] *Allen v. U.S.*, 164 U.S. 492 (1896).

We review a trial court's ruling on closing arguments for an abuse of discretion. *Jackson v. State*, 89 So. 3d 1011, 1018 (Fla. 4th DCA 2012). While attorneys are afforded wide latitude during closing arguments, they "must 'confine their argument to the facts and evidence presented to the jury and all logical deductions from the facts and evidence.'" *Id.* (quoting *Hosang v. State*, 984 So. 2d 671, 672 (Fla. 4th DCA 2008)). A prosecutor's closing argument "should be examined in the context in which it [was] made." *Id.* (alteration added) (quoting *Lubin v. State*, 963 So. 2d 822, 824 (Fla. 4th DCA 2007)). Thus, when determining whether a defendant was denied his or her right to a fair trial, we consider the cumulative effect of all improper arguments, including both objected-to and unobjected-to closing arguments. *Evans v. State*, 177 So. 3d 1219, 1235 (Fla. 2015), receded from on other grounds by *Johnson v. State*, 252 So. 3d 1114, 1117-18 (Fla. 2018).

The prosecutor made three arguments which were objected to by the defense: 1) comment on postarrest silence; 2) shifting the burden of proof; and 3) arguing facts not in evidence. We conclude that the court erred in overruling the objections regarding shifting the burden of proof and arguing facts not in evidence. We cannot conclude that the cumulative effect of these arguments was harmless beyond a reasonable doubt. Therefore we reverse.

As to the first objectionable argument, the prosecutor told the jury that the defendant was presenting his story for the first time at trial. This did not amount to a comment on silence because the defense had elicited from the detective that appellant had been interviewed after his arrest. "[W]here a defendant does not remain silent at the time of arrest, the constitutional right to remain silent has been found not to have been exercised." *Joyner v. State*, 979 So. 2d 1246, 1248 (Fla. 4th DCA 2008). Thus, while the State cannot use a defendant's postarrest *silence*, regardless of whether the silence was induced by *Miranda* warnings, *see State v. Hoggins*, 718 So. 2d 761, 768-70 (Fla. 1998), the appellant was not silent. Therefore, the court did not err in overruling appellant's objection to the prosecutor's statement in closing argument.

The prosecutor's repeated comments regarding the defense's failure to cross-examine the law enforcement officers improperly shifted the burden of proof to appellant. "[T]he state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence." *Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991) (footnote omitted). Only where the defendant asserts some

5

affirmative defense or relies on facts not equally available to the State does the defendant have a burden of proof. *Id.*

In *Ramirez v. State*, 1 So. 3d 383, 384 (Fla 4th DCA 2009), the defendant in a battery on a law enforcement officer case testified that she had been injured in a fracas with the officers during which they had roughed her up. On cross-examination, the State asked her, over objection, if she had pictures of her injuries, but she had neither pictures nor any medical evidence. *Id.* at 385. Then in closing, the prosecutor emphasized that the only pictures of the defendant for the jury to view were ones taken by the police, which showed no injuries. *Id.* The prosecutor then told the jury that the evidence supported only the State's version of the altercation. *Id.* Our court reversed, concluding that the prosecutor had engaged in improper burden shifting. *Id.* at 385-86. "The trial court abused its discretion when it allowed the State to shift that burden to the defendant through its questions and comments that implied the defendant should have produced photographic evidence and medical reports to support her version of events." *Id.* at 386.

Similarly, in this case, by castigating the defense for not cross-examining the officers about details of appellant's version of events to support his account, the prosecutor shifted the burden to the appellant to provide corroborating evidence for his testimony and implied that the jury could not otherwise accept the appellant's version as true. Thus, the court erred in overruling appellant's objection to this argument.

Finally, during closing, defense counsel stressed that the State did not present any DNA evidence that linked appellant to the gun. The prosecutor responded that Palm Beach County was subject to budget restrictions, which is why DNA testing was never conducted in this case. Appellant argues there was no evidence of how the State prioritized its cases for DNA testing or any testimony about why testing was not conducted. Although attorneys are afforded wide latitude during closing arguments, they "must 'confine their argument to the facts and evidence presented to the jury and all logical deductions from the facts and evidence.'" *Hosang v. State*, 984 So. 2d 671, 672 (Fla. 4th DCA 2008) (quoting *Knoizen v. Bruegger*, 713 So. 2d 1071, 1072 (Fla. 5th DCA 1998)). "Arguing facts that are not supported by the record is clearly improper." *McKenzie v. State*, 830 So. 2d 234, 238 (Fla. 4th DCA 2002). In *McKenzie*, defense counsel in a possession of cocaine trial argued that the defendant did not know that the substance in a glass tube was cocaine. *Id.* at 237. In response, the prosecutor argued that the defendant had said, "I don't smoke crack" when she was found with the glass tube, thus showing knowledge of what was in the tube. *Id.* However, no one testified that the

6

defendant made that statement. *Id.* at 238. We held that the prosecutor erred in arguing these facts which were not in evidence, even though the prosecutor was responding to the defense argument. *Id.*

Likewise in this case, the prosecutor responded to the defendant's argument to the jury on the lack of DNA evidence by introducing facts not in evidence regarding the department's priorities in testing DNA. It is error, and this argument neutralized a significant portion of the defense through the use of non-record facts in closing argument.

Even though the court erred in overruling the objections, we must determine whether these cumulative errors necessitate a new trial. In *State v. DiGuilio*, 491 So. 2d 1129, 1139 (Fla. 1986), the court placed the burden on the State to prove an error was harmless beyond a reasonable doubt. It explained:

> The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.

*Id.* While the officers provided eyewitness testimony of what occurred, and the detective stated that he saw the appellant with a gun in his hand, the defense was able to show discrepancies in some of the testimony of the officers. Although the appellant countered that testimony with his own explanation of what occurred, the prosecutor's argument may have made the jury believe, erroneously, that corroboration of appellant's testimony was required in order for it to be believed. The State did not provide additional inculpatory evidence, including DNA evidence, the lack of which figured prominently in the closing argument. The prosecutor's non-record explanation of why no DNA testing occurred reduced the effectiveness of the defense strategy which had been to attack the lack of evidence. This error may not have been harmful beyond a reasonable doubt by itself, but it must be considered cumulative with the more significant burden-shifting comments. The jury deadlocked at first, and only after the court gave an *Allen* charge and testimony was replayed to the jurors, did they

7

find appellant guilty.  We cannot say beyond a reasonable doubt that the errors in closing argument did not affect the verdict.

For these reasons, we reverse the conviction and remand for a new trial.

DAMOORGIAN and LEVINE, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***