DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**TIMOTHY ADAM WALDING,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-1900

[November 12, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Daliah H. Weiss, Judge; L.T. Case No. 502017CF009818AMB.

Carey Haughwout, Public Defender, and Logan T. Mohs, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Marc B. Hernandez, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant belatedly appeals his conviction and sentence for sexual battery with a deadly weapon, false imprisonment, and burglary with a deadly weapon. He argues the court erred in overruling his objections to the State's cross-examination questions because they amounted to an improper comment on his right to remain silent or impermissible burden-shifting and to the admission of firearm testimony. We disagree and affirm.

The State charged the defendant with one count of sexual battery with a deadly weapon, one count of false imprisonment, and one count of burglary with an assault or battery. According to the probable cause affidavit, the defendant broke into his next-door neighbor's house and raped her at knifepoint.

The victim was sleeping when she awoke and saw a masked man holding a knife to her throat telling her not to scream. The defendant tied

her hands with black cords and undressed her. He put a condom on and sexually assaulted her. Afraid he would kill her, the victim cooperated.

At one point she offered to change positions, but that did not work. The defendant removed the condom and forced the victim to perform oral sex. At some point, the victim began to cry and beg for her life. She promised she would not tell anyone if he just left.

The defendant explained he could not leave because she knew who he was. A conversation ensued and the victim realized the defendant was her neighbor. When she asked him if he was her neighbor, he shook his head "yes" and took the mask off.

The victim kept assuring him she would not tell anyone about the attack if he let her go. He responded he could not leave and bound the victim's feet together. After a few minutes, he changed his mind, untied the victim, and said, "I can't do this." The victim saw the defendant place the knife in a holster attached to his pants.

During their conversation, the man admitted that he had planned the crime. He confided that he had hoped the victim had deadbolted her door because he "didn't want to do this." The defendant then pulled what looked like a fishing hook from his pocket and told her he used it to get in.

At one point the defendant showed the victim he was wearing her flip-flops and explained he put them on after his socks got wet from the sprinklers outside. The defendant placed the used condom in an empty Cheez-It bag and folded it a couple of times before putting it in his pocket.

Eventually, the victim convinced the defendant to let her go outside to smoke a cigarette. As they stood in her patio around 4:00 a.m., another neighbor saw the victim with a man she could not identify. The neighbor testified the man was wearing black clothes and the interaction between them seemed strange.

The defendant left the victim's home soon after he was seen. The victim ran inside, locked her doors, and called a friend. Her friend called the police upon arrival at the victim's home.

When the police arrived, they surrounded the defendant's home. They saw a young man look out a window and then disappear several times over the course of an hour. Eventually, the defendant's sister and grandmother came out to ask the police why they were there. The police told them they were looking for the defendant. The sister went inside to get him. Within

two minutes the defendant's sister came out screaming hysterically, "[i]s she okay? Is she okay? He has a gun."

The defendant eventually came out of the house unarmed. He was arrested and placed in the back of a patrol car. After his *Miranda* rights were read to him, the defendant gave the police a short statement indicating that he had been at home all night. A recording of the statement was published to the jury.

The police executed a search warrant at the defendant's house. Inside the defendant's bedroom, they found a knife and holster on top of a table. They also found a large garbage bag containing: (1) a pair of black pants; (2) a black long-sleeve shirt; (3) a pair of wet socks; (4) a Cheez-It bag with a used condom inside; (5) a fishing hook; and (6) several straps and strings. Black cords were found hanging in the closet.

The police also recovered a note written by the defendant. It read: "If this is the end I must admit I regret almost everything I've ever done. . . . I am no ones [*sic*] captive and will die for my last moments of freedom." A gun was found inside the sister's bedroom but was not taken into evidence. Law enforcement also photographed the victim's damaged front door.

Before voir dire, the parties and trial court discussed the number of potential jurors to be questioned. Defense counsel commented that "[t]here's no firearm so we don't have to worry about people's feeling[s] about guns, so that saves us about 10 jurors" (interruptions omitted). The State and trial court agreed. The potential jurors were not questioned about their views on firearms. The trial court later informed the potential jurors the charged offenses involved no firearms, nor children.

Before opening statements, the State advised the trial court it planned to elicit testimony that the defendant wrote a suicide note and introduce the defendant's sister's statement concerning the firearm. Defense counsel objected to any testimony about a gun, arguing the firearm added nothing to the crime and would only prejudice the jury.

The State responded that it planned to use the gun and suicide note as evidence of consciousness of guilt. The State explained it would not argue the defendant was violent or had a bad character because he had a gun. The court reserved ruling until it heard a proffer from the witness that heard the sister's statement. After the proffer, defense counsel maintained his objection. The trial court overruled it based on the State's argument that it showed consciousness of guilt.

The defendant testified he and the victim had consensual sex on the night of the alleged attack. On cross-examination, the defendant maintained that he and the victim had an ongoing sexual relationship, and he lied to the police about being home all night to keep their relationship secret. The defendant was afraid his family would not approve given their age difference.

The State then asked the defendant if this was the first time he offered this version of the facts:

**State:** All right, and when you had sex with her you were 18?

**Defendant:** Yes, ma'am.

**State:** And you knew it was legal?

**Defendant:** Yes, ma'am.

**State:** But you were scared of your family finding out?

**Defendant:** Yes, ma'am.

. . . .

**State:** And this is the first time that we're hearing that it was consensual sex?

**Defendant:** Yes, ma'am.

**State:** This is a year later?

**Defense Counsel:** Objection.

Before the court ruled on the objection, the defendant responded this was his first chance to explain. The State asked the defendant why he failed to tell the detective that the encounter was consensual in his original statement. Again, defense counsel objected. At that point, the trial court asked the parties to approach the bench.

Defense counsel claimed the State's questions were improper comments on the defendant's right to remain silent. The State responded the defendant did not remain silent because he gave a short statement to the police after his *Miranda* rights were read to him. The State further responded it was permitted to explore the defendant's credibility and

impeach him with his inconsistent testimony. The trial court overruled the objection.

The jury found the defendant guilty as charged. The trial court sentenced him to 50 years in prison. From his conviction and sentence, the defendant now appeals.

- ***Right to Remain Silent Comment***

The defendant argues the State improperly commented on his right to remain silent. He argues this was harmful error because it was an "all or nothing" case on the consent issue.

The State responds the defendant's argument lacks merit because he did not remain silent, having made a short statement after his arrest.[1] And, the State argues it was permitted to impeach the defendant with the inconsistencies between his initial statement and trial testimony.

We have de novo review of a claim that the State's comment violated the defendant's right to remain silent. *Brookins v. State*, 228 So. 3d 31, 38 n.7 (Fla. 2017).

The defendant argues the State is not permitted to comment on a defendant's post-arrest silence. He suggests that by asking him why he failed to tell the police the encounter was consensual in his initial statement the State violated his right to remain silent. He cites to several cases where courts have reversed convictions because the State improperly commented on the defendant's silence. *See, e.g., Hopkins v. State*, 286 So. 3d 335 (Fla. 4th DCA 2019), *rev. denied*, SC20-144, 2020 WL 1817493 (Fla. Apr. 9, 2020).

The State responds the defendant's reliance on *Hopkins* and other cases is misplaced because the defendants in those cases remained silent after their arrest. Here, the defendant did not remain silent. He provided a post-*Miranda* statement. *Joyner v. State*, 979 So. 2d 1246, 1248 (Fla. 4th DCA 2008) ("[W]here a defendant does not remain silent at the time of arrest, the constitutional right to remain silent has been found not to have been exercised.").

---

[1] The State's suggestion that the issue was unpreserved is without merit. Defense counsel did not initially provide a legal ground for his objection. But the omission was cured at the bench conference where defense counsel argued the State's questions were a comment on the defendant's right to remain silent.

The State's cross-examination did not constitute an improper comment on the defendant's right to remain silent. "Whether such a comment is improper depends on the context in which it was made." *Id.* Here, the State did not comment on what the defendant did *not* say in his post-arrest statement. Instead, the State challenged the inconsistencies between the defendant's post-arrest statement and his exculpatory statement at trial.

The defendant first claimed he remained home all evening. But at trial, he testified he visited the victim that night to have consensual sex. The post-arrest statement and trial testimony directly contradicted each other. In this context, the State impeached the defendant's credibility by pointing out the inconsistencies.

In *Gooden v. State*, 266 So. 3d 858 (Fla. 4th DCA 2019), we held the State did not impermissibly comment on the defendant's right to remain silent because he gave a statement *after* his arrest. While the State cannot use a defendant's post-arrest silence, the defendant did not exercise that right. *Id.* at 862. Accordingly, we held the State's closing argument that "the defendant was presenting his story for the first time at trial" did not amount to a comment on silence. *Id.* We reach the same conclusion here.

- ***Burden-Shifting Comment***

Next, the defendant argues the State's same questioning shifted the burden of proof. The State responds no burden-shifting occurred because the State neither argued nor implied the defendant had to provide an exculpatory statement. Alternatively, the State claims any error was harmless.[2] We agree with the State.

Here, the State did not imply the defendant had the burden of providing an exculpatory statement prior to trial. Rather, the State attacked the defendant's credibility by demonstrating the inconsistencies in the defendant's initial statement and his trial testimony.

Even if error occurred, it was harmless. *State v. DiGuilio*, 491 So. 2d 1129 (Fla. 1986). Physical evidence recovered from the defendant's bedroom corroborated the victim's unimpeached testimony. Law

---

[2] Similarly, the State's claim that the burden-shifting argument is unpreserved is also without merit. We have recognized that a comment on silence objection is essentially indistinguishable from a burden shifting objection. *See Lenz v. State*, 245 So. 3d 795, 798–99 (Fla. 4th DCA 2018) (explaining that comments on silence may also equate to burden-shifting comments).

enforcement recovered:  a knife in a holster, dark clothing described by the victim and neighbor, a pair of wet socks, a suicide note, a fishing hook, and a Cheez-It bag containing a used condom.  And, the victim's front door showed signs of forced entry.  As required by *DiGuilio*, the State proved beyond a reasonable doubt that the error complained of did not contribute to the verdict.

We therefore affirm on these issues.

- ***The Firearm Testimony***

"We review a trial court's ruling on the admission of evidence advanced to demonstrate consciousness of guilt for abuse of discretion."  *Partin v. State*, 82 So. 3d 31, 38 (Fla. 2011).

The defendant argues the firearm testimony was improperly admitted.  Defense counsel objected to the officer's testimony recounting the sister's excited utterance that the defendant had a gun.  The defendant argues the testimony was irrelevant because a knife was used during the crime.  He adds the gun was legal, found in the sister's room, and it is unclear if the sister was referring to her brother in her statement.

And lastly, the defendant argues even if the statement was relevant to show consciousness of guilt, any relevance was substantially outweighed by the danger of unfair prejudice.  He claims firearm evidence is inherently prejudicial and the jurors were not questioned about their views on firearms.

The State responds the defendant's possession of the gun, together with the suicide note, demonstrated consciousness of guilt based on the chronology of events.  Further, the evidence was not unfairly prejudicial because the firearm testimony did not indicate the defendant committed the charged offense.  Where all the parties understood the defendant used a knife during the assault, there was little chance of confusion.  Alternatively, any error was harmless because the testimony did not become a "feature of the trial".

The State correctly notes the defendant did not preserve the voir dire argument.  Defense counsel never argued the lack of voir dire questioning as a legal basis for his objection.  Instead, he raised relevance and unfair prejudice.  As such, the voir dire argument was not preserved.  *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982).

7

On the issue of relevance, the defendant argues, "[a] gun different than the one used in a crime is not relevant to prove that the crime occurred." *Metayer v. State*, 89 So. 3d 1003, 1007 (Fla. 4th DCA 2012). He relies on *Agatheas v. State*, 77 So. 3d 1232 (Fla. 2011), where our supreme court held that a revolver recovered from the defendant's backpack five years after the murder was neither relevant nor corroborative.

The State responds the gun and suicide note were logically and temporally linked to the crime that occurred only hours before. Together, they demonstrated consciousness of guilt. *See Partin*, 82 So. 3d at 38 (finding no error in introducing firearm testimony to demonstrate consciousness of guilt).

Here too, the State established a sufficient link between the firearm testimony and the charged crime. Testimony revealed the defendant peered out the window watching the police for an hour before they asked to speak with him. When his sister went to get him, she returned screaming "he has a gun." The firearm testimony was relevant to prove the defendant's acknowledgement of guilt and desire to evade prosecution. *See Straight v. State*, 397 So. 2d 903, 908 (Fla. 1981). As in *Partin*, there was no error in introducing the firearm statement.

We also reject the defendant's suggestion that any relevance was substantially outweighed by unfair prejudice. *Partin*, 82 So. 3d at 39. The firearm testimony was unlikely to suggest to the jury that the defendant committed the rape. The crime had been committed using a knife, which was found in the defendant's bedroom. And, the trial court told the jury the charged offenses involved no firearms. The State introduced the statement as proof of the defendant's acknowledgement of guilt. The danger of unfair prejudice did not outweigh the testimony's relevance.

For the foregoing reasons we affirm the defendant's conviction and sentence.

*Affirmed.*

GROSS and KUNTZ, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**